ATTRIDGE *v.* SMITH.

Opinion delivered December 23, 1912.

1.   CONTRACTS—TIME.—Time may be made of the essence of the contract by the express stipulation of the parties; or it may arise by implication from the very nature of the property or the avowed object of the seller or the purchaser, as where the condition of the parties and the circumstances under which the contract was made showed that time of performance was to be of the essence.   (Page 629.)

2.   SAME—BREACH OF CONTRACT—WAIVER.—The plaintiff will not be held to have waived a previous breach of a contract to cut timber by giving defendants notice to begin cutting at a certain date where defendants did not comply with such demand.   (Page 629.)

3.   SAME—DEPOSIT AS SECURITY FOR PERFORMANCE.—Where a sum of money was deposited by defendants with plaintiff as security for compliance with their contract, and plaintiff sustained damages in excess of such sum on account of defendants' failure to perform the contract, plaintiffs are entitled to retain the money, whether it be considered as penalty or liquidated damages.   (Page 630.)

Appeal from Yell Chancery Court, Dardanelle District; *Jermiah G. Wallace,* Chancellor; affirmed.

*W. L. Moose* and *Allen Hughes,* for appellant.

1.   There was no such breach of the contract as entitled appellee to terminate it, unless appellants by words or acts manifested an intention not to perform.   78 Ark. 336.

2. If there was a breach by appellants, it was waived by virtue of the notice given by appellee on December 1, 1907, to proceed under the contract to remove the timber from certain parts of the land. 3 Page on Contracts, § 1494, and cases cited.

Before a breach of a contract will have the effect of discharging the other party to it, the covenant broken must be some vital term of the contract, breach of which makes performance impracticable and the accomplishment of the purpose of the contract impossible. 3 Page on Contracts, § 1450; 115 Wis. 219.

3. The $1,250 was not liquidated damages. It was deposited as the contract says "as security" for performance by appellants. 102 Va. 1; 73 Ark. 432; 55 Ark. 376; 122 N. Y. 397.

*Bullock & Davis,* for appellee.

1. Appellants did not have three years, but only such time or part of three years as was necessary to cut and remove the timber, under the terms of the contract. Time in entering upon the performance of the contract was of its essence. 95 Ark. 531.

2. It was not necessary that appellants by words expressly repudiate the contract, but the rule is that where a party to a contract, either by words *or conduct,* distinctly and unequivocally manifests his intention not to perform, the other party is justified in treating the contract as at an end, for the purpose of suing for a breach thereof. 78 Ark. 336.

3. Whether the sum sued for is liquidated damages or a penalty, it is not necessary to pass upon in this case. If it is liquidated damages, appellants can not recover. 16 Cyc. 77, § 6. If it is a penalty, they can not recover because they have failed to bring themselves within the rule entitling them to relief by proving that the damages resulting to appellee are less than the sum sued for. 16 Cyc. 76, note 54; 106 Ky. 763; 51 S. W. 593; 17 Johns. (N. Y.) 357. On the measure of damages, see 78 Ark. 336, 342, 343; 73 Ark. 432; L. R. 8 C. P. 167; 99 Fed. 222; 110 U. S. 338; 163 Mass. 95; 95 Ark. 363.

McCULLOCH, C. J. Appellee was the owner of a large tract of timber land in Yell County, Arkansas, and on May 23,

1907, entered into a written contract with appellants whereby he sold the timber to them for stipulated prices per thousand feet, payments to be made on semi-monthly inspections and itemized statement "giving number of pieces, sizes, kind of stock manufactured, and number of feet." The contract provided that appellants should manufacture the timber already cut by appellee before the same became damaged, and to use diligence in cutting and manufacturing the timber, and that no other timber should be manufactured by appellants during the time specified, namely, three years from and after April 15, 1907. Appellee further agreed to allow appellants the free use of a tramroad and cars in hauling the timber described in the contract. It also contained the following clause:

"10. The parties of the first part agree to pay said party of the second part the sum of twelve hundred and fifty dollars, and the same is hereby acknowledged by the party of the second part, this amount of money to be held by the party of the second part as security for the compliance of this contract by the parties of the first part."

The sum named above was paid over to appellee by appellants at the time the contract was executed.

At that time appellee was engaged in cutting the timber and manufacturing it into lumber. He testified that there were about 5,000 feet of logs on the ground, which he had cut, and about 3,000 feet of single-tree material, which he had manufactured, and that he pointed it out to appellants, who agreed to pay for cutting and manufacturing it. The testimony adduced by appellee was to the effect that appellants made no effort to cut or manufacture any of the timber until the summer of 1908, and that in the meantime appellee made repeated efforts to induce them to commence work. He testified that soon after the execution of the contract he went with appellants to assist them in making satisfactory arrangements for a mill-site and roads from the mill, which appellants had an opportunity to secure; that they declined to accept any of the offered arrangements, and left without returning again until the next year; that he frequently wrote to appellants during the year and urged them to commence work, but heard nothing from them, and on December 1, 1907, gave them

written notice to cut on certain tracts. Appellants left the State, and in January, 1908, appellee gave notice of forfeiture of the contract. The testimony also showed that the season of 1907 was a favorable one for working the timber.

Appellants claim that one Parker, who had a contract for certain other timber, interfered and prevented them from beginning work in the spring or summer of 1907. The testimony of Parker tended to contradict that.

Taking the testimony as a whole, it was sufficient to show that appellants had no reasonable excuse for their failure to commence work on the timber during the season of 1907.

They instituted this action against appellee on January 24, 1910, asserting the right under the contract to cut the timber and seeking to restrain appellee from interfering with them in performance of the contract.

Appellee answered, alleging a breach of the contract by appellants and an abandonment thereof, and setting up damages in the sum of $5,000 on account of the alleged breach of the contract.

The chancellor on final hearing dismissed appellants' complaint for want of equity.

The evidence was sufficient to sustain the finding of a breach of the contract and of an abandonment thereof by appellants. The finding is, at least, not against the preponderance of the evidence. The contract, according to its express terms, provided that appellants should "use due diligence in cutting and manufacturing said timber," and that they should manufacture no other timber during the specified time.

"Time may be made of the essence of the contract by the express stipulation of the parties, or it may arise by implication from the very nature of the property, or the avowed object of the seller or the purchaser." *Cheney* v. *Libby*, 134 U. S. 68.

The condition of one of the parties and the circumstances under which the contract was made clearly showed that time of performance was to be of the essence. Appellants were to have three years within which to completely perform, but they were to begin within a reasonable time and proceed expeditiously to complete performance.

It is insisted that appellee waived the breach of the con-

tract by giving appellants notice on December 1, 1907, to cut timber on certain tracts. The contract gave appellee the right to require, by notice of thirty days, the cutting of timber on any "forty or forties" of the land. He is not obliged under the contract to select the particular tracts from which the timber should be cut, but had the right to do so. He had not, up to December 1, 1907, elected to exercise his privilege of selecting the particular tracts from which timber should be cut, and had given no notice of his desire to make such election, but had been insisting generally on performance of the contract, without claiming the right to name any particular tract.

If appellants had accepted the notice and proceeded within a reasonable time to comply with it, the prior delay would have to be treated as waived. But they failed to do so. Under those circumstances they can not claim a waiver.

It is unimportant to determine whether the sum of money paid in advance under the contract was intended as liquidated damages or as penalty for nonperformance, or either. The contract specified that the money should be advanced "as security for the compliance with the contract."

The evidence warranted a finding that appellee sustained damages in excess of that sum on account of appellant's failure to perform the contract. This according to the rule laid down by this court as to the correct method of measuring damages for breaches of contracts. *Spencer Medicine Co.* v. *Hall.* 78 Ark. 336; *Singer Mfg. Co.* v. *W. D. Reeves Lumber Co.,* 95 Ark. 363.

Under those circumstances, appellants can not claim a recovery of the sum paid in advance as security for their performance of the contract. *Nelson* v. *Hirschberg,* 70 Ark. 39.

The decree of the chancellor in dismissing the complaint for want of equity was correct, and the same is therefore affirmed.