EDWARD C. SNYDER, Plaintiff, *v.* THE CITY OF BINGHAMTON, Defendant.

ANN M. SNYDER, Plaintiff, *v.* THE CITY OF BINGHAMTON, Defendant.

Supreme Court, Broome County, November 7, 1930.

*Chernin & Gold,* for the plaintiffs.

*Edwin H. Moody,* for the defendant.

PERSONIUS, J. Ann M. Snyder, while riding as a passenger in a car driven by Vera Davis on a public street in the city of Binghamton, was injured when that car collided with an automobile owned by the defendant and operated by a duly appointed fireman, responding to a fire alarm. Ann M. Snyder sues for her injuries and Edward C. Snyder, her husband, sues to recover his expenses in the attempted cure of his wife and for the loss of her society and services. The actions were tried together, resulting in verdicts for each plaintiff. The defendant moves for new trials.

Section 282-g of the Highway Law (as added by Laws of 1929, chap. 466), effective April 10, 1929 (prior to the accident), provides briefly that a city shall be liable for the negligence of a person appointed to operate a municipally-owned vehicle. Concededly, prior to its adoption, municipalities were not liable for injuries caused by the negligence of their firemen and policemen. " Two kinds of duties are imposed on municipal corporations, the one *governmental* and a branch of the general administration of the government of the state, the other *quasi private or corporate* * * *. In the exercise of the latter duties, the municipality is liable for the acts of its officers or agents, while in the exercise of the former, it is not." (*Lefrois* v. *County of Monroe,* 162 N. Y. 563, 567; *Wilcox* v. *City of Rochester,* 190 id. 137, 142.) " Public duties properly styled governmental in character include, among others, the functions of fire and police protection, the protection of health and the administration of public charities. Within this field, the rule of non-liability prevails." (*Augustine* v. *Town of Brant,* 249 N. Y. 198, 204; *Gaetjens* v. *New*

*York,* 132 App. Div. 394.) The underlying reason for this rule seems to be that it is the duty of the State government to provide police, fire and health protection, and that in performing these duties the city acts as *agent* of the State and is, therefore, not liable for the negligence of the persons actually performing the duties, while on the other hand, in providing parks, playgrounds and the like, the city is performing *quasi* private duties, of peculiar advantage to the city and its inhabitants, and for the negligence of the persons actually performing these duties, the city is liable.

Did section 282-g of the Highway Law eliminate this rule of non-liability and make the city liable for the negligence of a policeman or fireman operating a municipally-owned vehicle in the discharge of his duty, notwithstanding the fact that he was performing a so-called governmental duty?

The defendant very ably argues that it did not, but guided by the apparent intent of the Legislature, we think that it did. In construing a statute, our primary consideration is to ascertain and give effect to the intention of the Legislature. In determining such intention, we, of course, must give heed to the language of the statute. Likewise, " ' due regard must be had for the old law, the mischief and the remedy.' " (*Cohen* v. *Neustadter,* 247 N. Y. 207; 1 McKinney Consol. Laws, §§ 52 and 56.)

The language of section 282-g of the Highway Law, omitting particulars on which we later comment, is: " Every city   *   *   * shall be liable for the negligence of a person duly appointed *   *   *   to operate a municipally owned vehicle   *   *   *   acting in the discharge of his duties   *   *   *. Every such appointee shall, for the purpose of this section, be deemed an *employee of the municipality, notwithstanding the vehicle was being operated in the discharge of a public duiy for the benefit of all citizens of the community and the municipality derived no special benefit in its corporate capacity.*" Obviously, it covers the operation of vehicles used in the discharge of a public (governmental) duty. The words and expressions used in the section are so similar to the words and expressions used in the decisions laying down the former rule of non-liability as to compel the conclusion that it was intended to modify that rule. Manifestly, the Legislature intended to change the rule of non-liability in the performance of governmental duties so far as it applies to the operation of municipally-owned automobiles. It must have intended to deal with governmental duties as no legislation was necessary with respect to *quasi* private or corporate duties; such liability already existed. The courts will assume that a statute was not enacted without some purpose. (1 McKinney Consol. Laws, § 57.)

What mischief in the old law did it seek to remedy? In recent years, the fairness and reasonableness of the rule of non-liability of municipal corporations has been questioned. Agitation for its modification has not been wanting. It is found not only in public utterances and writings of leading jurists but in our statutes and decisions. In 1928 it was held in *Lacock* v. *City of Schenectady* (224 App. Div. 512) and *Nichitta* v. *New York* (250 N. Y. 530) that a city was not liable for the negligence of a policeman or ambulance driver, while it was held in *Augustine* v. *Town of Brant* (*supra*) that a city was liable for its negligence in maintaining a public park. In the latter case the court said: " The modern tendency is against the rule of non-liability." At its next session the Legislature enacted section 12-a of the Court of Claims Act (Laws of 1929, chap. 467), by which the State, itself, waived its immunity from liability for the torts of its representatives and it enacted the section involved here, 282-g, modifying the non-liability rule as to municipalities. There was introduced in the last Legislature an act sponsored by the Attorney-General eliminating the rule of non-liability of municipal corporations entirely. The Attorney-General's comment thereon in the New York State Bar Association Bulletin of September, 1930, ably expresses the public trend of thought on the subject. The time-honored reason assigned for the rule, viz., that the King can do no wrong, finds no favor in modern thought. It should not. To say that an individual shall be liable for his servant's negligence, and that a municipality shall not be likewise liable, is without reason.

We are, therefore, of the opinion that the Legislature intended to and did by adopting section 282-g of the Highway Law, annul the rule of non-liability of municipal corporations for the negligence of persons operating municipally-owned vehicles in the discharge of the operator's duty. Such liability now exists, even though the operator is performing a governmental duty. The last sentence of the section, as we have said, seems to compel this conclusion.

One reason assigned (*Maxmilian* v. *Mayor, etc., of N. Y.*, 62 N. Y. 160, 163) for the non-liability rule is that policemen, firemen and the like are technically the representatives of the State, appointed and directed by the city as the *agent* of the State, for whose acts, not the agent, but the principal is liable. But section 282-g expressly provides that every such appointee shall be deemed an employee of the municipality, thereby making the rule of *respondeat superior* applicable between them.

Section 282-g applies by its terms to a person duly appointed by the governing board or commission of the municipality to operate a municipally-owned vehicle in the discharge of a " statutory duty "

imposed upon the municipality. The defendant earnestly argues that no such duty is " imposed upon " it in " respect to the fire department." The Legislature has imposed and defined the defendant's duty with respect to the fire department by the general provision of the Second Class Cities Law, section 130 *et seq.*, and by the special provisions contained in the supplemental charter of the city of Binghamton, chapter 668 of the Laws of 1917, sections 211 to 222, inclusive. Without discussing these statutes at length, it is sufficient to say that they provide a complete plan for the maintenance and management of a fire department. Whatever is necessarily implied in a statute is as much a part thereof as if written therein. (1 McKinney Consol. Laws, § 75.) We might, therefore, reasonably say that a statutory duty in respect to the fire department is impliedly imposed upon the defendant. Concededly, in conducting a fire department, the defendant exercises governmental powers belonging to the State. If such powers are not delegated to it, at least by inference, how are they delegated? But we do not think we are compelled to rely upon any inference. Section 134 of the Second Class Cities Law provides that " the police and fire departments *shall* * * * remain as now constituted until the same shall be changed by action of the common council. The common council * * * *shall* not have the power to diminish the number of the members * * *. The commissioner *shall* appoint, as vacancies in said departments occur, all officers * * *." A fire department exists; the statute directs that it shall remain, that it shall not be diminished, that vacancies shall be filled by appointment. Section 131 thereof (as amd. by Laws of 1909, chap. 573) provides that the commissioner of public safety " shall have cognizance, jurisdiction, supervision," etc., of the " fire department * * * and of the officers and members . * * * and shall possess and exercise fully and exclusively * * * and perform all duties pertaining to the government, maintenance and direction " thereof. Do not these enactments impose a statutory duty in respect to the fire department upon the defendant? We think they do.

*Lacock* v. *City of Schenectady* (224 App. Div. 512), urged by defendant, applied the old rule of non-liability for the negligent acts of a police officer and extended the rule to include the alleged negligence of the commissioner in the *selection* of the police officer. The court held that the commissioner in selecting the officer was acting as the agent of the State in performing a governmental duty in the same manner as the police officer was acting as such agent in the performance of his duty. The duty in reference to the police department is " imposed upon the municipality " even though

in performing that duty it acts as the agent of the State and is performing a governmental duty. The duty is imposed upon the municipality no less when it is acting as such agent than it would be if it were acting as the principal.

Section 282-g did not attempt to create a statutory duty but rather a statutory liability.

The *Lacock* case did hold that section 282-e of the Highway Law (repealed by Laws of 1929, chap. 54), making the *owner* of a vehicle liable for damage done by it when driven with his permission, did not apply to a municipality when performing a governmental duty. However, the reason assigned for such holding was that the " long recognized rules " of non-liability could only be changed by " unequivocal language " and were not changed by the general language of section 282-e; that " immunity so grounded " was " not taken away by legislation not specific in its meaning." (224 App. Div. 515.) That reason does not here exist; section 282-g is expressed in " unequivocal language " and is " specific in its meaning."

Section 217 of the supplemental charter of the city of Binghamton (Laws of 1917, chap. 668) provides that the city firemen " are not officers or agents of the municipal corporation * * * for whose acts or omissions the said corporation shall be held liable in a civil action for injuries to persons or property." The defendant urges that this section, in force since 1917, was not repealed or superseded by said section 282-g of the Highway Law and is controlling here.

Generally, a local law is not repealed by a general statute without the use of express words, but there is no inflexible rule which prohibits the repeal of a special law by a general one, and the question whether such repeal has been effected is *always one of legislative intent.* (1 McKinney Consol. Laws, § 175.) This proposition is uniformly supported by the many cases there cited. An analysis of them would be burdensome and without profit. The question here must be answered by ascertaining the legislative intent.

It is said that an intent to repeal a local law by the subsequent enactment of a general law is indicated where the two laws are repugnant and inconsistent, where it is not possible to assign a reasonable motive for retaining the provisions of the local law, where the subject of legislation is not a local matter, where the reasons for adopting the general statute are ample for repealing the special law, or by having regard to the language and the general scope of the general law, etc.

In *McKenna* v. *Edmundstone* (91 N. Y. 231, 233) the court said: " This is but the application of the larger rule that a statute

is not to be deemed repealed by implication by a subsequent act upon the same subject, unless the two are manifestly inconsistent with, and repugnant to each other, or unless a clear intention is disclosed on the face of the later statute, to repeal the former." The charter provision here declares that firemen are not the officers or agents of the municipality for whose acts the corporation is liable. Section 282-g provides in substance that every fireman shall be an employee of the corporation, for whose acts, while operating a municipally-owned vehicle, the corporation shall be liable. Clearly, the two are inconsistent and repugnant to each other. As said in *People ex rel. Fleming* v. *Dalton* (158 N. Y. 175, 180): "The legislature never contemplated that two warring and inconsistent * * * systems should exist side by side in the state so that an act may be performed with immunity" in one city which is a misdemeanor in the State at large. In the present case the Legislature could hardly have intended that the negligent act of a fireman or policeman in Binghamton would create no liability on the city, while such an act would create liability in the other cities of the State. The language of section 282-g is that *every city* shall be liable and that *every such appointee* shall be an employee. This language cannot be disregarded. No special, local or other reason is suggested for taking the city of Binghamton out of the general law. The charter provision, section 217, merely enacted the existing common-law rule of non-liability. We have seen that the purpose of section 282-g was to change and absolutely reverse the rule of non-liability of municipal corporations in performing governmental duties. If there was sufficient reason for making this change, there is equal reason for repealing the charter provision. The reasons are not only ample but clearly applicable. If this non-liability rule was unjust and unreasonable in other cities of the State, it is equally so in the city of Binghamton. A construction of a statute is favored which makes it operate equally on all classes of persons and avoids unjust discrimination. (1 McKinney Consol. Laws, § 83.) In *People* v. *Jaehne* (103 N. Y. 182) the Court of Appeals was called upon to determine whether the general bribery law contained in the Penal Code superseded the special bribery act contained in the Greater New York Charter. The court pointed out the absurdity and injustice of having one law on the general subject for New York city and another for the other cities of the State. Paraphrasing its language (p. 196) to fit the present case, to say that the Legislature did not intend by this general act to repeal the charter provision "involves the necessity of ascribing to the Legislature an intention to discriminate" as to the liability for a negligent act "when committed by a municipal

officer of the city of [Binghamton], and when committed by municipal officers in other cities * * *. Such legislation is absurd in theory and leads to injustice. It regulates " liability " according to the locality of the " injury " instead of by the nature of the " act. " It is repugnant to the principle that law should be equal and impartial and ignores a natural sentiment which requires even-handed justice."

The Legislature sought to destroy the exemption of the municipality from liability in the particular instance covered by section 217 of the charter. Its purpose was " unmistakably declared " and meets the strict rule expressed in *Matter of Ryan* v. *City of New York* (228 N. Y. 16, 20). We conclude that section 217 of the supplemental charter was intended by the Legislature to be and was, so far as it applies to the operation of municipally-owned motor vehicles, superseded by section 282-g of the Highway Law.

The defendant makes a point of the fact that section 282-g was added to article 11 of the Highway Law after that article had been substantially repealed and re-enacted in the Vehicle and Traffic Law. Nevertheless, section 282-g was enacted by the Legislature and signed by the Governor. It may be an orphan but it became and is a part of the statutory law of the State.

The defendant's motion for a new trial in each case should be denied.