SCHUMACHER, Respondent, vs. CITY OF MILWAUKEE and others, Appellants.

*May 31—October 11, 1932.*

44

For the appellants there were briefs signed by _Max Raskin,_ city attorney, _Joseph L. Bednarek,_ assistant city attorney, and _Shaw, Muskat & Sullivan_ and _Shaw, Muskat & Paulsen_ of Milwaukee, and oral argument by _Mr. Bednarek._

For the respondent there were briefs by _Rubin & Zabel,_ attorneys, and _W. B. Rubin_ of counsel, all of Milwaukee, and oral argument by _Mr. Rubin._

The following opinions were filed June 20, 1932:

ROSENBERRY, C. J.  The first proposition urged upon our attention here is that the city of Milwaukee, having been engaged by its servants in the performance of a governmental function, is not liable.  _Engel v. Milwaukee,_ 158 Wis. 480, 149 N. W. 141, and cases cited.  Such is undoubtedly the law in the absence of statute imposing liability. A new section, sec. 66.095, was added to the statutes by the 1929 legislature.  It reads as follows:

"Any person, firm or corporation suffering any damage proximately resulting from the negligent operation of a motor vehicle owned and operated by any city, and which damage is occasioned by the operation of such motor vehicle in the performance of municipal business, may in the manner and form and within the time provided in section 62.25, file a claim therefor against such city and the common council of such city shall have the right to allow, compromise, settle and pay the same.  In the event such claim is disallowed, the claimant may then institute an action therefor against such city pursuant to the provisions of section 62.25."

It is contended by the defendant city, however, that this section creates no right of action against the city; that it merely confers upon the common council of the city a right, in the exercise of its discretion, to allow and pay claims of

the nature described in the section. It is argued that because the language of this section does not conform to the language of sec. 81.15, which creates liability of municipalities for defective highways, it must have been the clear intention of the legislature not to create liability but merely to confer power to act. As to trucks operated by a city in its proprietary capacity the statute had no effect. The city was liable for the negligence of its servants in such operations. The statute can apply only in cases where the city is engaged by its servants in the discharge of a governmental function. If the contention of the city be sound, the right of the claimant to institute an action against the city pursuant to the provisions of sec. 62.25 would be meaningless. Certainly no action would lie unless the liability were absolute. No court could review a merely discretionary act of the common council. Therefore an appeal, if no liability was created, would be a futile and nugatory thing.

It is true that statutes in derogation of the common law are to be strictly construed, but that does not mean that the court is to struggle to defeat the purpose of the legislature. While language might have been used which was more definite and certain, construing the act as a whole, having reference to the law as it was at the time the act was passed, it is considered that the clear legislative intent and purpose was to create a liability on the part of the city in favor of those who were injured by the negligent operation of vehicles owned and operated by the city in the discharge of a governmental function as well as in its proprietary capacity. If municipal business was not intended to include business transacted in the performance of a governmental function, then the section amounts to nothing because as to the non-governmental acts the city was already liable when it acted in a proprietary capacity.

It is next urged that the damages are excessive. We have carefully reviewed the evidence and we find no grounds upon which the verdict may be disturbed in that regard.

It is next urged that the court erred in excluding evidence which was offered to show the meaning of the term "answering a fire alarm" as that term is used in sec. 85.16 (3), Stats. 1927, which exempts police officers and others from speed limitations and highway traffic regulations in certain cases. Among other things it is provided that "all members of fire departments shall likewise be exempt while going to a fire or answering a fire alarm." In this case the truck had been driven to the point indicated by the alarm. The fire was of no consequence. The defendant sought to show that according to the regulations of the fire department, answering a fire alarm included taking the equipment out and all things done in response to the alarm until the equipment was returned to its place. If such a regulation exists in the Milwaukee fire department, it would hardly control courts in the determination of the legislative purpose in the enactment of the section referred to. If the intent and purpose of the legislature was to provide that all members of fire departments were exempt while upon the public streets in the operation of fire equipment, it would have been very easy for the legislature to have so indicated. They said they should be exempt while going to a fire, and so as to complete the exemption in cases where the alarm was turned in when there was no fire, when answering a fire alarm was included, putting the two things upon an equal footing. We can discover no legislative purpose to exempt members of fire departments from the operation of the statute except when they are going to a fire or going to a place in response to a fire alarm.

It is next urged that the court erred in refusing to grant a new trial on account of the alleged misconduct of the

juror, Frederick J. Kiefer. The juror was examined upon the *voir dire* and answered as to his business that he was a real-estate broker; that he had been in that business fifteen to twenty years and that he received the first license that was issued by the Real Estate Board. He was asked and correctly answered that he knew none of the lawyers in the case either in a social or business way; that he had never been in the office of any of them. He was also asked whether he knew of any reason why he could not be a fair and impartial juror and he answered that he was not conscious of any reason why he could not be such a fair and impartial juror. During the course of the trial it was brought to the attention of Mr. Sullivan, attorney for the insurance company, that the juror Kiefer had been associated with his brother in the ambulance-chasing business, as to which see *State v. Kiefer,* 197 Wis. 524, 222 N. W. 795. Nothing was done about the matter, however; counsel for the city did not insist upon knowing the source of Mr. Sullivan's information, and the matter was allowed to rest until the close of the trial when the facts in regard to Kiefer's association with the ambulance-chasing business were fully brought out. We shall not determine whether or not Mr. Kiefer's association with his brother in this business would have constituted grounds for challenge or in any way disqualified him as a juror. He no doubt answered truthfully when he said he was not conscious of anything which would prevent him from acting as a fair and impartial juror. In any event counsel for the defendant city's surety concluded not to press the matter further, and having accepted the jury and gone on with the trial, both the city and the surety are now estopped from raising the question. No court guards more jealously the right to a fair and impartial jury trial than does this court. However, litigants may not sit by with information which gives them notice of a juror's disqualification or charges them with notice of his disqualification and then after an adverse verdict take advantage of the

information which they had and which was not communicated to the court or opposite counsel until an effort is made to impeach the verdict. Counsel for the plaintiff offered to proceed with eleven jurors, but to this Mr. Sullivan declined to accede. Under the circumstances of this case, it is considered that the trial court correctly held that the defendants were not entitled to a new trial.

*By the Court*:—Judgment affirmed.

OWEN, J. (*dissenting*). There was introduced in the legislature of 1929 a bill known as No. 187 A, providing as follows:

"Section 1. A new section is added to the statutes to read: 62.255 (1) Any person, firm or corporation suffering damage to person or property proximately resulting from the negligent operation of a motor vehicle operated by a city having a population of over two hundred thousand shall have a right of recovery against such city.

"(2) All claims for such recovery shall be filed and actions started as provided in section 62.25."

This bill was amended and enacted as sec. 66.095, set forth in the opinion. The bill as introduced plainly created a liability for damage suffered from a motor vehicle operated by any city having a population of over 200,000. This bill the legislature refused to pass. This most conclusively indicates that the legislature did not intend to make the city absolutely liable for damages growing out of the performance of its governmental functions. It did, however, enact a substitute amendment, appearing in the statutes as sec. 66.095. By this act the common council of such city was empowered "to allow, compromise, settle and pay" damages resulting from the negligent operation of a motor vehicle owned and operated by such city, whether at the time of the injury it was or was not operated by the city in the performance of a governmental function. At least the statute is subject to such construction. If it authorized the council to pay damages resulting from the performance of

the city's governmental functions, it worked a change in the common law. In order to give some effect to the statute it is not necessary to hold, as the opinion does, that the legislature intended to create an absolute liability on the part of the city. If the legislature intended that, it would have been accomplished by the passage of the bill as introduced. But the refusal to pass the bill as introduced indicates that no such thing was intended.

Much stress is placed upon the fact that sec. 66.095 authorizes the commencement of an action, as provided in sec. 62.25, if the claim be disallowed. This would seem to be a rather superfluous provision, as any one may commence an action for any claim disallowed by the city council under the provisions of sec. 62.25. A similar provision in the original bill, however, was just as superfluous. The similar provision in the original bill certainly was not intended to create an absolute liability, because that was fixed by what preceded. The original bill might just as well have said nothing about beginning an action, because that was already provided for in sec. 62.25. To say that the provision in either bill indicates an intent to make the city absolutely liable accords undue potency to the right to bring an action. It was not considered in *Apfelbacher v. State,* 160 Wis. 565, 152 N. W. 144, that a similar legislative provision subjected the state to absolute liability for damages resulting from the performance of its governmental functions. In my judgment, no intent to change a principle of the common law of such importance, and so firmly rooted, should be imputed to the legislature by the use of such casual language after its flat refusal to pass a bill which plainly expressed such purpose.

I am authorized to state that Mr. Justice FAIRCHILD concurs in these views.

A motion for a rehearing was denied, with $25 costs, on October 11, 1932.