LORETTA HAYES, Plaintiff-Appellant, v. CITY OF KANSAS CITY, MISSOURI, a Municipal Corporation, Defendant-Respondent, No. 41924—241 S. W. (2d) 888.

Division Two, July 9, 1951.

Motion for Rehearing or to Transfer to Banc Overruled, September 10, 1951.

*Marcy K. Brown, Jr., David H. Bresler* and *Frank L. Cohn* for appellant.

*David M. Proctor,* City Counselor, *John J. Cosgrove* and *T. James Conway,* Assistant City Counselors, for respondent.

TIPTON, J.—In the circuit court of Jackson County, Missouri, appellant filed an action for personal injuries she received by being struck by a truck operated by the city while backing in a southerly direction in an alley of respondent. At the close of all the evidence the trial court gave an instruction directing a verdict for the respondent city on the sole ground that the employee operating the truck was engaged in cleaning the public alley, which was a governmental function, for which respondent was not liable for the negligence of its employees.

This alley runs east and west, and is between Vine and Highland Streets and south of 22nd Street. This alley intersects another alley that runs south from 22nd Street. It was near this intersection and in the alley that runs south from 22nd Street that appellant was injured by respondent's truck.

Forrest Moseley was a sanitary enforcement officer and he testified that in the fall of 1948 the unsanitary condition of the alley between Vine and Highland was called to his attention. Upon inspection he found the western section of the alley "badly littered with wood, ashes, rubbish, garbage and all such refuse that renders it unsanitary to the health of the community." Moseley reported the condition of this alley to Harvey Bright, district foreman of the street cleaning department, who ordered Brown and Compier, laborers ·in the street cleaning department, to take a truck and a "highloader" to the alley and to clean the alley on October 20, 1948. Brown operated the highloader and Compier the truck.

The west section of the east-west alley had several mounds 3 or 4 feet high, making a part of the alley impassable for vehicle traffic. These mounds contained ashes, dirt, rocks and cans impacted into

the bed‹ of this unpaved alley. The highloader went into the alley from the Vine Street entrance, but the truck went down to the 22nd Street entrance because it could not travel over the mounds of rubbish, trash and garbage in the east-west alley from Vine Street.

The highloader has a scoop that lowers and as it moves forward this scoop is filled with whatever it comes in contact. When full it is raised and its contents then dumped into the bed of the truck. That morning 4 truckloads of debris were taken to the city dump. The truck had a capacity of 5 cubic yards.

About noon the highloader broke down and Compier went to get a mechanic, brought him back, drove around the block and backed down the 22nd Street alley for a load he thought he would get, as he figured the mechanic would have the highloader working. It was while backing the truck that it struck appellant and injured her. The mechanic was unable to repair the highloader and the work stopped, but later in the day Compier went back to fill some tire track holes with a shovel in order to make the surface of the alley smooth, and then automobiles were able to travel in this part of the alley. Respondent did not use men to sweep or clean the alley.

The grade of the alley was established in the year 1890 and a clerk from the city engineer's office testified that the records in that office did not show that there was an authorization by the city council for grading this alley after that year.

Other essential facts will be stated in the course of this opinion.

■ Appellant's brief says: ''It is unquestionably the law in this state that street cleaning is a governmental function for which the city is not liable for negligence in its performance. It is also equally true that the city is liable for negligence in construction of its streets and removing obstructions therefrom, maintaining its streets, or for its failure to keep streets free from nuisance, defects or obstructions caused by its negligence or that of third persons, of which it has notice.''

We think this is a correct statement of the law. A city ''has the duty to construct and maintain them [streets] in such condition that they will be reasonably safe for public travel, and, therefore, is liable in damages for injuries caused by negligent construction or by failure to keep them 'free from nuisances, defects, and obstructions caused by itself or by third parties if it * * * had actual or constructive notice thereof in time to abate the nuisance, remove the obstruction or repair the defect.' There can be no question about these well established rules or that the duties imposed by them are non-delegable duties.'' Carruthers v. City of St. Louis, 341 Mo. 1073, 111 S. W. 2d 32, l. c. 35.

On the other hand, the rule in this state is firmly established that the keeping of streets clean and free from filth and noxious refuse is a governmental function and a city is free from liability in connection

therewith. Cassidy v. St. Joseph, 247 Mo. 197, 152 S. W. 306; Behrmann v. St. Louis, 273 Mo. 578, 201 S. W. 547. The plaintiff in the Cassidy case sued the city for damages caused by the negligence of the driver of a team used by the city in cleaning its streets. In holding the city not liable, we said (Mo. 1. c. 207):

"It [the city] also assumes the duty, where the act of its creation so provides, to furnish police protection to the inhabitants, to take measures to protect their health, and to insure general cleanliness and decency. * * * The patrol wagon and its driver, the city ambulance with its driver, the street sweepers with the vehicles and employees that gather the dirt, are all agencies of the government with respect to these matters as well as are the mayor and council who provide the rules that set them in motion. The rule *respondeat superior* does not apply as between them and the municipality, nor is the city under obligation to account to any private individual for the manner in which these discretionary duties are performed. * * * These principles are almost universally recognized by the courts, * * *"

In the Cassidy case the dirt in the street was swept in small piles and then the city employees shoveled it into wagons drawn by horses. One team of horses ran away, striking an employee of the city, who died from these injuries.

In the case at bar, the injuries to appellant were caused by a truck's being backed up an alley to get a load of dirt to be put into the body of the truck. There is evidence in this case that this is the first time the city had used the highloader. We can see no difference between the method of getting the dirt off the street of the city of St. Joseph when it had been swept in piles by hand and getting the dirt out of the alley by the use of a highloader and loading it into a truck. We have ruled that a modern method of cleaning the street would make no difference in the application of the law in the case of Lober v. Kansas City, 74 S. W. 2d 815, 1. c. 821, wherein we said:

"It seems to us, however, that the flushing of the streets with water by the street cleaning department of the city government appertains and is primarily referable to the city's power and duty to care for and preserve the health and safety of the inhabitants of the city, which is governmental, rather than to its duty to keep the streets in a safe and suitable condition for use and travel. Nor does it seem to us that any distinction can properly be made between cleaning the streets in the primitive way of collecting the dirt and filth and hauling it off by horse and wagon and the modern method of flushing the streets with water to be carried off by the sewers. The fact that the city owns, controls, and operates the waterworks system which it uses for such sanitary purposes can make no difference, as it also owns and operates the more primitive appliances used for the same purpose.

Each also is operated on and along the public streets of which the city has entire control."

It is true there is evidence that there was dirt, which we assume meant earth, mixed with the piles of ashes, tin cans and bottles in this alley, but we do not believe this can be distorted into evidence that the street was being graded.

The fact that these mounds of dirt, ashes and cans made the alley unsafe for travel might create liability on the part of the city if a person were injured by attempting to drive an automobile in this alley. This would not aid appellant for the reason that it would not be the proximate cause of her injuries. At the time the truck struck appellant, it was being backed up for the purpose of getting another load of the dirt, ashes, cans and garbage in this alley.

After Moseley had inspected this alley he made an effort to get the tenants in the buildings adjoining it to clean it up, but obtaining no cooperation he went to the property owners and requested them to clean it up. He gave them a formal five-day notice. They failed to cooperate, whereupon he issued a second ticket or notice and had warrants served. They agreed to clean up their property and Moseley agreed to have the alley cleaned. The fact that in doing this work the alley was made passable for automobile traffic is not controlling. This result was only incidental to the purpose of the work. "The test is not that of casual or incidental connection." City of Denver v. Porter, 61 U. S. Cir. Ct. of App. 173.

The evidence conclusively shows that respondent was not repairing or grading this alley but was removing dirt, ashes and cans and was engaged in cleaning the alley.

Appellant next contends that the city's immunity from liability for the performance of a governmental function is a common law doctrine. However, since she was injured by a motor vehicle operated upon streets and alleys of the city, the common law doctrine does not apply when the injury was caused by a motor vehicle because that doctrine has been modified to that extent by Sections 8383, R. S. Mo., 1939 and 8374, as amended by the Laws of 1941.

Section 8383, supra, provides in part that "Every person operating a motor vehicle on the highways of this state shall drive the same in a careful and prudent manner, and shall exercise the highest degree of care, and at a rate of speed so as not to endanger the property of another or the life or limb of any person * * *." The pertinent part of Section 8374, supra, reads: "Motor vehicles used as ambulances, patrol wagons and fire apparatus, owned by any municipality of this state, shall be exempt from all of the provisions of this article while being operated within the limits of such municipality, * * *."

Appellant cites the case of Miller v. Manistee County Board of Road Commissioners, 297 Mich. 487, 298 N. W. 105, 136 A. L. R. 575.

The Michigan statute provides that the owner of a motor vehicle is liable for any injury caused by negligent operation thereof by his agent. It further provides that the term "owner" includes a corporation. That act says: "The provisions of this act applicable to the drivers of vehicles upon the highways, shall apply to the drivers of all vehicles owned or operated by this state or any county, city, town, district or any other political subdivision of the state subject to such specific exceptions as are set forth in this act. The provisions of this act shall not apply to persons, teams, motor vehicles and other equipment while actually engaged in work upon the surface of a highway but shall apply to such persons and vehicles when traveling to or from such work."

The Michigan Supreme Court held that since the road district was a municipal corporation it was liable under the statute, even if the motor vehicle was being used in a governmental function.

Appellant also cites the case of Snyder v. Binghamton, 138 Misc. 259, 245 N. Y. S. 497, 233 App. Div. 782. That case held the city liable for personal injuries caused by a city owned motor vehicle, as the statute reads: "Every city * * * shall be liable for the negligence of a person duly appointed * * * to operate a municipally owned vehicle * * *."

Appellant cites the Wisconsin statute, which provides that anyone suffering any damage resulting from the negligent operation, in the performance of municipal business, of a motor vehicle owned and operated by any city, might file a claim therefor against such city or might institute an action against the city. The Supreme Court of that state in the case of Schumacher v. Milwaukee, 209 Wis. 43, 243 N. W. 756, held the city liable under that statute when a person was injured by the city fire truck when the city was in the discharge of a governmental function.

Of course, Sections 8374 and 8383, supra, of our statute are entirely different from the statutes of Michigan, New York and Wisconsin just discussed and, therefore, these cases are no authority for holding that our statute imposes any liability for injury caused by a municipally owned motor vehicle while engaged in a governmental function.

"The state and its agencies are not to be considered as within the purview of a statute, however general and comprehensive the language of such act may be, unless an intention to include them is clearly manifest, as where they are expressly named therein, or included by necessary implication. This general doctrine applies with especial force to statutes by which prerogatives, rights, titles, or interests of the state would be divested or diminished; or liabilities imposed upon it; but the state may have the benefit of general laws, and the general rule has been declared not to apply to statutes made for the public good, the advancement of religion and justice, and the prevention of injury and wrong." 59 C. J. § 653, pp. 1103-1104.

Bearing in mind the rule of law just announced, we hold that our motor vehicle law does not impose liability on a city for damages caused by its motor vehicles when they are used in a governmental function, such as cleaning a street or alley.

It follows that the trial court properly sustained respondent's motion to dismiss and, therefore, the judgment of the trial court should be affirmed. It is so ordered. All concur.