David G. JUNGERMAN, Appellant/Cross–
Respondent,

v.

CITY OF RAYTOWN, Respondent/Cross–
Appellant.

No. 78592.

Supreme Court of Missouri,
En Banc.

June 25, 1996.

David G. Jungerman, Raytown, Missouri, S. Ruth Lehr, Kansas City, Missouri, for Appellant–Respondent.

Claudia J. York, Thomas A. Sheehan, Kansas City, Missouri, for Respondent–Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John R. Munich, James R. McAdams, Asst. Attys. Gen., Jefferson City, Missouri, for Amicus.

BENTON, Judge.

David G. Jungerman appeals from a judgment notwithstanding the verdict, negating the jury's finding that the Raytown Police Department negligently lost his watch. Raytown cross-appeals from the denial of its alternative motion for a new trial. Following opinion by the court of appeals, this Court granted transfer. *Mo. Const. Art. V, § 10.* Reversed and remanded.

### I.

On July 26, 1990, Raytown police arrested Jungerman after he tried to detain four juveniles for trespassing. Considered in the light most favorable to Jungerman, the evidence shows that the arresting officer transported him to the police station, placed him in the booking area, and took his personal property, including a wallet holding about $1,171 and a gold Rolex watch. Department policy required the arresting officer to hand Jungerman's effects to a booking officer who was immediately to inventory, record, and store them in a property bag. In fact, Jungerman's property was placed in an open wooden box on a counter accessible to the public for about 45 minutes, while the booking officer took a statement on an unrelated matter.

Other discrepancies occurred in handling Jungerman's property. The booking officer never completely searched his wallet, failing to inventory over half of the money there. The booking officer placed her own name on one form instead of Jungerman's. The property control sheet did not list his watch. The booking officer also failed to give Jungerman a receipt for his property.

Jungerman's watch was missing when he left the police station the next morning. After the police failed to locate or replace the watch, Jungerman sued Raytown, claiming negligence in handling the watch and failure to administer and supervise the police department. Jungerman further alleged that Raytown maintained insurance covering such a loss. The circuit court denied Raytown's motion to dismiss on the ground of sovereign immunity.

The jury returned a $9,175 verdict for Jungerman. Raytown moved for judgment notwithstanding the verdict, citing sovereign immunity and the public duty rule. The trial court granted the JNOV, denying Raytown's alternative motion for a new trial.

### II.

Judgment notwithstanding the verdict for the defendant is appropriate only if the plaintiff fails to make a submissible case. *See McCulley v. State Farm Mut. Auto Ins. Co.,* 668 S.W.2d 121, 122 (Mo.App.1984). On appeal from JNOV, appellate courts review the evidence in the light most favorable to the plaintiff, with the benefit of all reasonable inferences. *Stark v. American Bakeries Co.,* 647 S.W.2d 119, 121 (Mo. banc 1983). Where JNOV is based on an issue of law, the trial court's conclusions are reviewed de novo. *See Dial v. Lathrop R–II School Dist.,* 871 S.W.2d 444, 446 (Mo. banc 1994).

### III.

The key issue is whether sovereign immunity or the public duty doctrine shield Raytown from liability for losing Jungerman's watch.

The term "sovereign immunity" does not strictly apply to the immunity possessed by municipalities. Under common law, true sovereign immunity applies only to the state and its entities, preempting all tort liability. *State ex rel. Trimble v. Ryan,* 745 S.W.2d 672, 673–74 (Mo. banc 1988). This full immunity never applied to municipalities. *Id.* Rather, municipal corporations have a more limited immunity only for governmental functions, those performed for the common good of all. *Johnson v. Bi–State Development Agency,* 793 S.W.2d 864, 866 (Mo. banc 1990). Municipalities have no immunity for torts while performing proprietary functions, those performed for the special benefit or profit of the municipality acting as a corporate entity. *Id.; cf. Wollard v. City of Kansas City,* 831 S.W.2d 200, 203 (Mo. banc 1992) (no immunity for proprietary torts, though the two types in § 537.600(1) & (2)[1] have statutory damage caps).

1. All statutory references are to RSMo 1986.

If, like the police function, an activity is governmental, then the exceptions to governmental immunity must be considered. In this case, the exception at issue is the insurance exception in § 71.185. Before recovering under this exception, a claimant must overcome separate but related doctrines: discretionary immunity and public duty.[2]

### A.

■ Under the discretionary immunity doctrine, a city is not liable for the manner in which it performs discretionary duties. *See Foster v. City of St. Louis,* 71 Mo. 157, 158 (1879); *Cassidy v. City of St. Joseph,* 247 Mo. 197, 152 S.W. 306, 309–10 (1912); *Hayes v. City of Kansas City,* 362 Mo. 368, 241 S.W.2d 888, 891 (1951). Missouri cases on *municipal* liability do not define discretionary acts other than with words like "judicial" or "legislative." *See Foster,* 71 Mo. at 158; *Cassidy,* 152 S.W. at 310.

■ This Court has, however, often defined discretionary acts for purposes of *individual* officials' liability, which is instructive because municipalities act only through their officers. Discretionary acts require "the exercise of reason in the adaption of means to an end and discretion in determining how or whether an act should be done or course pursued." *Kanagawa v. State By and Through Freeman,* 685 S.W.2d 831, 836 (Mo. banc 1985), *quoting Rustici v. Weidemeyer,* 673 S.W.2d 762, 769 (Mo. banc 1984). In contrast, ministerial acts require certain duties to be performed "upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to [an employee's] own judgment or opinion concerning the propriety of the act to be performed." *Kanagawa,* 685 S.W.2d at 836. The final determination whether an act is discretionary, however, is based on the facts of each case, particularly on such factors as the nature of a given official's duties, and the extent to which the act involves policymaking or the exercise of professional expertise and judgment. *See id.*

### B.

■ By the public duty doctrine, a public employee is not civilly liable—even for breach of a ministerial duty—if that duty is owed to the general public rather than to a particular individual. *State ex rel. Barthelette v. Sanders,* 756 S.W.2d 536, 538 (Mo. banc 1988). This doctrine, first adopted in *Parker v. Sherman,* 456 S.W.2d 577, 579 (Mo.1970), applies equally to protect public officers in their individual capacities, and the municipalities for which they work. *Stacy v. Truman Medical Center,* 836 S.W.2d 911, 921 (Mo. banc 1992).

■ A duty is owed to particular individuals for "the performance of ministerial duties in which a private individual has a special, direct, and distinctive interest." *Barthelette,* 756 S.W.2d at 538. Such an interest exists when injury to a particular, identifiable individual is reasonably foreseeable as a result of an official's breach of duty. *See Green v. Denison,* 738 S.W.2d 861, 866 (Mo. banc 1987). Whether an individual has such a private interest depends on the facts of each case, not on broad pronouncements about the usual status of relevant functions. Finally, it cannot be assumed that a duty is private simply because it is ministerial.

### IV.

■ Raytown, as a municipality operating a police department, engages in a governmental function ordinarily protected by governmental immunity. Jungerman argues, however, that because Raytown's insurance covers his claim, its governmental immunity is waived to that extent by § 71.185. Since 1959, municipalities have been liable:

> as in other cases of torts for property damage and personal injuries including death suffered by third persons while the municipality is engaged in the exercise of the governmental functions *to the extent of the insurance so carried.*

S.W.2d 22, 24 (Mo.App.E.D.1991) *with O'Dell v. City of Breckenridge,* 859 S.W.2d 166, 168 (Mo. App.W.D.1993).

---

**2.** The exceptions in § 537.600 are not at issue in this case, and no opinion is expressed regarding the applicability of these doctrines under § 537.600. *Compare Fox v. City of St. Louis,* 823

§ 71.185 (emphasis added). Because this exception clearly existed prior to September 12, 1977, it remains a valid limit on governmental immunity. *See § 537.600; cf. State ex rel. Bd. of Trustees of North Kansas City Mem. Hosp. v. Russell,* 843 S.W.2d 353, 357–58 (Mo. banc 1992). As Raytown accurately notes, however, a waiver of governmental immunity does not necessarily waive a municipality's other defenses, including discretionary immunity and public duty.

### A.

■ Jungerman argues that the acts of inventorying and securing his property are ministerial rather than discretionary. This Court agrees. The mere act of inventorying and securing an arrestee's property in a prescribed manner during booking, is not a protected discretionary function in light of the lack of policymaking or expertise involved.

The facts of this case also evidence a ministerial function. The department's training manual, general ordinances, and regulations detail the procedures for booking arrestees, including the inventory and protection of property. The regulations even include specific procedures if the booking cannot be completed immediately. The fact that written procedures cannot anticipate every circumstance does not transform a ministerial activity into a discretionary function.

Raytown argues at length that cities will repeal regulations on booking and inventorying if such regulations evidence the ministerial nature of a duty. However, cities have many incentives for maintaining guidelines on handling the property of arrestees, all of which contribute to the proper administration of a well-run police department.

### B.

That inventorying, recording and storing Jungerman's property is ministerial, however, does not conclusively determine Raytown's liability. This Court must also determine whether that duty was owed only to the general public, or was a special, direct, and distinct duty owed to Jungerman individually.

■ Raytown cites cases declaring that the duties of police to enforce the laws and keep the peace are generally owed to the public at large and not to any one individual. *See, e.g., Beaver v. Gosney,* 825 S.W.2d 870, 873 (Mo.App.1992); *Jamierson v. Dale,* 670 S.W.2d 195, 196 (Mo.App.1984). *See also Parker,* 456 S.W.2d at 580; *Spotts v. City of Kansas City,* 728 S.W.2d 242, 247 (Mo.App. 1987). However, the mere involvement of police in an activity does not automatically make the duty "public."

Here, the specific duty at issue is to properly inventory, record, and secure Jungerman's property after its removal at the station. Although inventorying property may serve public purposes, such as the correct identification of arrestees, its primary purpose is to account for an arrestee's property in order that all lawful property not kept as evidence is returned upon release. *See Illinois v. Lafayette,* 462 U.S. 640, 646, 103 S.Ct. 2605, 2609–10, 77 L.Ed.2d 65 (1983); *Colorado v. Bertine,* 479 U.S. 367, 373, 107 S.Ct. 738, 741–42, 93 L.Ed.2d 739 (1987); *State v. Jones,* 865 S.W.2d 658, 659 (Mo. banc 1993). *See also Cooper v. Planthold,* 857 S.W.2d 477, 480 (Mo.App.1993). Even Raytown's training manual recognizes this purpose:

> The records and detention technician is responsible for that property and is to insure that it is returned to the prisoner upon his release.

The manual further notes that the procedure:

> protects us if the prisoner should decide that he had more property when he came in than when he left. This will become vital if the prisoner files stealing charges against you because he did not get all of his property back.

■ Jungerman unquestionably had a special, direct, and distinct interest in the proper handling of his personal property by the Raytown police department. Clearly, injury to him as a distinct, identifiable individual was foreseeable from a breach of the duty to inventory and secure his watch.

This distinguishes the present case from others where duties were found only to the public as a whole. *See Parker,* 456 S.W.2d at 580 (failure to enforce gambling laws); *Bar-*

*thelette,* 756 S.W.2d at 538 (failure to take safety measures at public swimming area); *Sherrill v. Wilson,* 653 S.W.2d 661, 668 (Mo. banc 1983) (failure to recapture inmate on a pass, who later injured member of the public); *Green,* 738 S.W.2d at 866 (negligence in apprehending criminal resulted in injury to member of the public).

This case is also distinguishable from *Cooper v. Planthold,* where an arrestee hung himself after police failed to remove his suspenders. 857 S.W.2d at 478. The court of appeals held that removing an arrestee's property protects all in custody, not just the arrestee, and that maintaining safe jails is a duty owed to the general public. *Id.* at 480. The duty to remove property is, however, separate from the duty to handle that property with due care once it is taken.

### V.

Raytown alternatively argues that, if the JNOV is reversed, this Court should order a new trial because the circuit court erroneously gave a bailment instruction in a negligence case. Raytown asserts that the verdict director was a "roving commission," permitting the jury to find liability without specifically submitting which acts were negligent.

However, Raytown neither objected to the verdict director as required by Rule 70.03, nor offered an alternative instruction. A party cannot complain about an instruction without a specific objection to it before the jury retires. *Rule 70.03* (effective Jan. 1, 1994). In the absence of such an objection, this Court reviews the instruction only for plain error resulting in manifest injustice. *Rule 84.13.*

Jungerman's claim was for negligence, shown by res ipsa loquitur. The verdict director was based on the res ipsa loquitur instruction in MAI 31.02(3):

Your verdict must be for plaintiff if you believe:

First, defendant (here describe defendant's control, right to control, or management of the instrumentality involved), and

Second, (here describe the occurrence, event or incident, which is alleged to be the type that does not ordinarily happen when those in charge use due care), and

Third, from the facts in evidence and the reasonable inferences therefrom, you find such occurrence was the direct result of defendant's negligence, and

Fourth, as a direct result of such negligence, plaintiff sustained damage.

The verdict director in this case read:

Your verdict must be for plaintiff if you believe:

First, plaintiff had a watch when he was arrested by the Raytown Police Department, and

Second, the watch was taken by the Raytown Police Department of the City of Raytown and was placed into its care and custody, and

Third, defendant City of Raytown failed to return the watch to plaintiff, and

Fourth, defendant City of Raytown was thereby negligent, and

Fifth, such negligence directly caused or directly contributed to cause loss to the plaintiff.

The term "negligent" or "negligence" as used in this instruction means the failure to use ordinary care. The phrase "ordinary care" means that degree of care that an ordinary careful and prudent person would use under the same or similar circumstances.

MAI 31.02(3), although appropriately used for bailment actions, is not necessarily a "bailment" instruction. Rather, it is a general res ipsa loquitur instruction that is properly used in negligence cases with facts fitting the MAI 31.02(3) pattern. *See also McCloskey v. Koplar,* 329 Mo. 527, 46 S.W.2d 557, 559 (1932).

A citizen may reasonably presume that property left with the police will not disappear if the police use due care. The Raytown police had control of Jungerman's property and, since he was jailed, clearly had superior knowledge about the means or cause of the loss. On these facts, the trial court did not commit plain error resulting in manifest injustice by giving the above verdict director.

## VI.

The judgment is reversed, and the case is remanded with directions to enter judgment in accordance with the verdict.

HOLSTEIN C.J., LIMBAUGH, ROBERTSON, COVINGTON and WHITE, JJ., and FLANIGAN, Senior Judge, concur.

PRICE, J., not sitting.