No. 46,304

GLOBAL TANK TRAILER SALES, *Appellee*, v. TEXTILANA-NEASE, INC., *Appellant*.

(496 P. 2d 1292)

Opinion filed May 6, 1972.

*Edward H. Powers*, of Kansas City, argued the cause and was on the brief for the appellant.

*William Chambers*, of Kansas City, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action to recover damages for the collapse of a tank trailer used in the hauling of liquid detergents. The plaintiff recovered a judgment in the lower court, and appeal has been duly perfected by the defendant.

The determinative question on appeal is whether the record presents sufficient evidence to sustain the trial court's finding of negligence on the part of defendant.

Global Tank Trailer Sales (plaintiff-appellee) is engaged in the business of selling tank trailers used in the transportation of liquid commodities. Textilana-Nease, Inc. (defendant-appellant) is a chemical company located in Wyandotte County, Kansas.

On the 10th day of July, 1967, Textilana-Nease agreed to purchase a tank trailer from Global and *in consideration of such purchase,* Global agreed that Textilana-Nease could use a tank trailer owned by Global until Global could deliver the new tank trailer to Textilana-Nease.

While the tank trailer was in Textilana-Nease's possession, and while the trailer was in use transporting a load of liquid detergent to Louisville, Kentucky, it collapsed at a point east of St. Louis, Missouri, on the highway. The trailer was not involved in a collision with any other vehicle; it was not driven off the road; but while being operated in a normal manner and without known cause it collapsed.

Global filed suit against Textilana-Nease in the sum of $6,975.39 for damage to the trailer, loss of use, interest and loss of profit on resale.

Global in its petition alleged a bailment of the tank trailer in question to Textilana-Nease pending delivery of a new tank trailer to Textilana-Nease; that Textilana-Nease received the tank trailer aind agreed to keep it safely and return the same on delivery of the new tank trailer; and that Textilana-Nease did not keep the tank trailer safely.

Textilana-Nease answered, among other things, that the tank trailer involved was defective in construction and that such fact was well known to Global and that Textilana-Nease used and operated the tank trailer with reasonable and ordinary care. Textilana-Nease also filed a counterclaim alleging that it had paid Global $12,500, the total consideration for the new trailer, and in addition had paid $1,250 as a deposit on the purchase which had not been refunded. Textilana-Nease, therefore, sought recovery of $1,250 and damages for the loss of 500 gallons of detergent which leaked from the tank trailer on the highway when it collapsed.

The trial court after hearing the evidence found the tank trailer involved was improperly loaded "in that it was not filled to the extent

commensurate with safety of a 'milk' trailer and known to be unsafe under such circumstances to those who dealt in this particular type of transportation." The trial court entered judgment for Global in the sum of $4,080.

The evidence is undisputed that Textilana-Nease paid the sum of $1,250 as a deposit to Global, which was an agent of Acro Tank Sales, upon execution of the contract of sale for the new tank trailer, and then paid the entire consideration for the purchase in the sum of $12,500 to Acro Tank Sales, but did not receive a refund of the deposit in the amount of $1,250. We should add at this point, Textilana-Nease did not present sufficient evidence of damage due to the loss of detergent on the highway, when the tank trailer in question buckled, to warrant further mention of this item for which it counterclaimed.

We have been cited to no Kansas case, nor has our research disclosed any, involving bailments for mutual benefit.

A bailment for mutual benefit arises whenever it appears that both of the parties receive a benefit from the transaction. It is not essential, to constitute a bailment for mutual benefit, that the bailee actually receive compensation in money or tangible property, so long as the bailment is an incident of the business in which the bailee makes a profit, or was accepted because of benefits expected to accrue. (*Miller v. Hand Ford Sales, Inc.*, 216 Or. 567, 340 P. 2d 181.)

In 8 Am. Jur. 2d, Bailments, § 10, it is said:

"In determining whether a bailment is one for the sole benefit of the bailor, without compensation or benefit to the bailee, or one for mutual benefit, from which the bailee is to derive benefit or profit, the inquiry is not directed to the character or certainty of the benefit or profit, but to whether the bailment was accepted for the purpose of deriving the one or the other. . . ." (p. 914.)

A bailment situation involving a tank trailer, such as the one at bar, confronted the court in *Nelson v. Fruehauf Trailer Co.*, 20 N. J. Super. 198, 89 A. 2d 445, and the New Jersey court said:

"If the custody or use of the bailed article is incidental to some other business transaction between the parties, it may result in a bailment for mutual benefit, even though the loan is gratuitous and for the use of the bailee. 4 *Williston on Contracts* (*Rev. ed.* 1936), § 1040. Thus, if the gratuitous loan is made for trial purposes to induce a purchase . . . or if a promise, express or implied, that a later gratuitous loan will be made forms part of the consideration for the purchase, a bailment for mutual benefit results. . . ." (pp. 202, 203.)

In the case at bar the trial court concluded the loan of the tank trailer in question was a bailment for the mutual benefit of the parties. Based on the foregoing law, the record supports the trial court's conclusion on this point.

The bailee in a bailment for mutual benefit must use ordinary care and diligence in the safeguarding of the bailor's property, and he is answerable for loss or injury resulting from failure to exercise such ordinary care and diligence. (8 Am. Jur. 2d, Bailments, § 206, p. 1092.)

Cases discussing the burden of proof in a bailment situation are *Strange v. Price Auto & Service Co.,* 169 Kan. 98, 218 P. 2d 208; and *Virginia Surety Co. v. Schlegel,* 200 Kan. 64, 71, 434 P. 2d 772.

The mere fact that a bailee is in possession of personal property belonging to the bailor does not transfer responsibility for its safety to the bailee. (*Blaker v. Sands,* 29 Kan. 551.) A bailee is not an insurer of the safety of the property of the bailor, regardless of the nature of the bailment.

We now turn to the evidence to determine whether the trial court's finding that Textilana-Nease was negligent in loading the tank trailer in question is supported by the record. Before Textilana-Nease can be held liable, it must be guilty of negligence.

Global in the trial of this matter presented the testimony of two witnesses, James A. Smith and David Estes. Smith owned Global Tank Trailer Sales and his testimony confirmed the nature of the transaction heretofore related. Smith testified the tank trailer loaned to Textilana-Nease here in question was a Standard Steel trailer which had a polished stainless steel finish and was the type *commonly used to haul milk.* Smith purchased the trailer from Standard Steel after it had previously collapsed and fixed it up. He informed Ralph Nease, general manager of Textilana-Nease, Inc., that Global had fixed up the old Standard Steel trailer, the one which had previously collapsed on Nease when he leased it from another company, and Mr. Nease was aware the tank trailer in question was the one he had previously used. According to Smith, Nease informed him that Textilana-Nease was going to carry liquid detergents in the tank trailer when the agreement was made. Smith had done business with Mr. Nease before, and considered him a customer, and stated that he lends trailers to customers to maintain their good will and to keep them buying; *that he knew Mr. Nease did not haul milk, and he knew Mr. Nease would haul concentrated*

*detergent in the tank trailer that he was lending to Textilana-Nease.*

Smith testified that the damage to the tank trailer in question while used by Textilana-Nease was the same kind of damage it had previously suffered; that is, it buckled in the middle at the dome. Smith was unaware of how much detergent was loaded on the trailer.

David Estes was the vice-president of Acro Tank Company which manufactures and repairs tank transports. He is a field engineer for the company and has a degree from Southwest Missouri State College. He testified that on a previous occasion his company had rebuilt this same tank trailer for James Smith; that the tank trailer in question was a 5,700-gallon milk trailer of stainless steel designed to carry milk; that milk tanks are designed to carry a full load to avoid churning the milk into butter within the tank while in use.

It is readily apparent from the record Global presented no evidence of negligence on the part of Textilana-Nease by the testimony of its witnesses.

Three witnesses testified for Textilana-Nease. William Payton was an engineer who specialized in the designing of trailer tanks associated with Tank Craft Products of Kansas City. He testified he was acquainted with the trailer in question, and that Mr. Nease had called him to see about getting the tank trailer repaired, when it had previously collapsed. He described the tank trailer as a milk tank designed to carry 5,700 gallons; that a trailer designed to carry 5,700 gallons loaded, with slightly in excess of 5,000 gallons, would not be a factor in the damage to the trailer; and "That a trailer designed to haul milk would not support a load of heavier material, but that how many gallons [were] put in the trailer would not be a factor." He could not testify as to the cause of the collapse of the trailer, but said that milk weighs 8.5 pounds per gallon and that liquid detergent weighs 10.5 or 11 pounds per gallon. He said, that although a milk tank is constructed in a lighter finish than other tanks, it should function properly if it is not overloaded; that short-loading a tank would not harm a tank other than give a rough ride due to surging action.

The next witness of Textilana-Nease was Leon Henry who drove the truck towing the tank trailer in question on the day it collapsed. According to his testimony the trailer was loaded by Textilana-Nease; that the truck had cleared the weight scales on the highway, and the gross weight was about 69,000 pounds. The witness noticed some surging action in the tank, which according to him, was a

normal condition with commodities such as liquids. He stated he did not think his tank trailer was fully loaded; that he did not believe the trailer could be loaded fully and meet the weight requirements.

The third witness to testify for Textilana-Nease was Ralph Nease. He related that he was familiar with the tank trailer in question and recognized it when he saw it, because his company had past experience with it. He said the willingness of Global to let it use the old trailer, pending delivery of the new trailer, was a factor in purchasing the new trailer from Global; that the detergent hauled at the time of the mishap weighed 9.1 pounds per gallon; that milk weighed 8.4 pounds per gallon; and that he discussed with Mr. Smith the use to which the tank trailer in question would be put.

On cross-examination he testified he was aware the tank trailer in question was a milk trailer and that it had no baffles in it. He stated he had no personal knowledge of what the actual gallonage in the tank trailer was on this particular trip, and that Mr. Estes had never told him the trailer must be loaded full. He was aware that the load limit on the tank trailer in question was 73,280 pounds gross, and if the trailer was fully loaded with detergent weighing 9.1 pounds per gallon the weight limit would be exceeded; therefore, the trailer was not fully loaded. He testified his company has used milk trailers for a number of years hauling detergents and are still using them at one plant of the Nease Chemical Company, and the company has never had an experience like this before.

No evidence is disclosed in the record of any misuse or negligent operation of the vehicle in question relative to overloading, to abnormal speed, to a collision with another vehicle, or to running the vehicle off the road.

As we view the record it discloses no evidence of negligence on the part of Textilana-Nease.

If there be any inference of negligence from the evidence in the record, it is dispelled by the admissions of Smith, the owner of Global. He knew the tank trailer in question was a clean bore milk tank, without baffles, designed to be fully loaded with milk; that the tank had previously collapsed; and that Textilana-Nease would use the tank trailer when loaned for the purpose of hauling detergents, which weighed more than milk.

Under these circumstances fully loading the tank trailer in question with detergents would result in a gross weight in excess of

that permitted upon the highways. Smith is therefore charged with the knowledge that the tank trailer in question could not be used on the highway, unless it were loaded with detergents at less than capacity. On this state of the record, the loading of the tank trailer in question with detergents at less than capacity, to haul the products for which the tank trailer was loaned, does not, as a matter of law, constitute negligence on the part of Textilana-Nease, the bailee.

An implied warranty of fitness has been recognized in connection with bailments made for the mutual benefit of the parties. The rule is that if a bailment is for the mutual benefit of both the bailor and the bailee, such as a let-for-hire agreement, then a higher duty arises on the part of the bailor, the general rule being that, while the bailor is not an absolute insurer against injuries from a defective chattel, he is charged with the duty of inspection to determine whether or not the chattel is fit for the purpose intended. Thus, if the defect were discoverable, he became liable for injuries to the bailee, arising from this unsafe condition, under the theory of an implied warranty of fitness. ( *Miller v. Hand Ford Sales, Inc.,* supra; and *Nelson v. Fruehauf Trailer Co.,* supra, and authorities cited in these decisions. )

*A fortiori,* Global's knowledge of the material facts and its knowledge of the use to which the tank trailer here in question would be put, requires that Global be held to impliedly warrant the tank trailer to be fit for the use intended and to which it was put by Textilana-Nease.

The judgment of the lower court is reversed with directions to enter judgment for the defendant in the sum of $1,250 and costs.