SPRUYTTE v DEPARTMENT OF CORRECTIONS

1. PLEADING—CAUSES OF ACTION—LABELS—GOVERNMENTAL IMMUNITY
   —TORTS—CONTRACTS.

   The Court of Appeals is not controlled by the labels chosen by a
   plaintiff for a cause of action where significant public policy
   considerations are involved; therefore, where an action against
   a governmental agency actually sounded in tort, but the plain-
   tiff brought an action for breach of a bailment contract, the
   trial court acted properly in granting the defendant's motion
   for accelerated judgment based on the defense of governmental
   immunity to the actual tort claim.

2. TORTS—GOVERNMENTAL IMMUNITY—GOVERNMENTAL FUNCTION—
   STATUTES.

   All governmental agencies are immune from tort liability in all
   cases where the governmental agency is engaged in the exer-
   cise or discharge of a governmental function, subject to several
   exceptions (MCLA 691.1407; MSA 3.996[107]).

3. TORTS—GOVERNMENTAL IMMUNITY—GOVERNMENTAL FUNCTION—
   WORDS AND PHRASES—CASE-BY-CASE ANALYSIS—OPERATION OF
   JAIL—PRISONER TRANSFER.

   The term "governmental function" is a term of art which has
   been used by courts of this state to describe those activities
   which due to their public nature should not give rise to liability
   at common law; in the absence of prior judicial decision on
   whether a given activity is a governmental function the courts
   will take a case-by-case approach; the operation and mainte-
   nance of a jail is a governmental function and prisoner transfer
   procedure is an incident of the operation and maintenance of
   prisons and thus is within the scope of the performance of a
   uniquely governmental function.

REFERENCES FOR POINTS IN HEADNOTES

[1] 61 Am Jur 2d, Pleading §§ 24, 65, 66, 76.

[2, 3] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 27–
30.

Municipal immunity from liability for torts. 60 ALR2d 1198.

[3] 60 Am Jur 2d, Penal and Correctional Institutions §§ 3, 19, 22, 23,
27, 28.

Appeal from the Court of Claims, James G. Fleming, J. Submitted February 16, 1978, at Lansing. (Docket No. 77-2347.) Decided March 21, 1978.

Complaint by Floyd Spruytte against the Department of Corrections for damages for the failure of defendant to return personal property turned over to agents of defendant. Judgment for defendant. Plaintiff appeals. Affirmed.

*Shumar & Murphy,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Michael J. Hodge,* Assistant Attorney General, State Affairs Division, for defendant.

Before: DANHOF, C. J., and BRONSON and N. J. LAMBROS,* JJ.

PER CURIAM. Plaintiff, a prisoner, was transferred from Southern Michigan Prison to Marquette in August, 1973. In preparation for his transfer, plaintiff was required to turn over his personal property to the agents of the defendant. In return, he received a resident personal property receipt which itemized the property he had placed in the custody of the defendant. Plaintiff's property was never returned to him after his arrival at Marquette.

Plaintiff brought suit alleging that the resident personal property receipt constituted a bailment contract and claiming damages of $28,939.84 for breach. Defendant moved for accelerated and summary judgment on the ground that plaintiff's complaint was a disguised tort claim and that, as a tort claim, it was subject to the defense of govern-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

mental immunity. Plaintiff appeals from an order granting defendant's motion.

The trial court did not err in finding that the receipt did not constitute an express contract since it did not contain any contract terms. Therefore, any bailment relationship must be based on an implied contract. An implied contract, like other contracts, requires mutual assent and consideration. The parties did not appear to have any intention of entering into a contractual relationship since this procedure was required as an aspect of prison management and control. Furthermore, this purported contract lacks consideration since the parties were only performing a preexisting duty. As part of the transfer procedure, plaintiff was required to give up his property to the defendant, and the defendant was required to take it and hold it for him. Even if plaintiff was able to show a bailment contract, the Court could look beyond the contract label to determine whether the substance of the complaint sounded in tort. When significant public policy considerations are involved, the Court is not controlled by the labels chosen by the plaintiff, *Greatrex v Evangelical Deaconess Hospital,* 261 Mich 327; 246 NW 137 (1933). In *Greatrex,* at 332, the Court quoted with approval the entire opinion of *Rudy v Lakeside Hospital,* 115 Ohio St 539; 155 NE 126 (1926), where the Ohio court dismissed a similar action which attempted to circumvent a tort liability defense by pleading an implied contract of bailment.

Subject to certain statutory exceptions, all government agencies shall be immune from tort liability in all cases where the government agency is engaged in the exercise or discharge of a governmental function. MCLA 691.1407; MSA 3.996(107).

"Governmental function" is not defined by statute. It is, however, a term of art which has been used by the courts of this state to describe those activities of government which due to their public nature should not give rise to liability at common law. In the absence of prior judicial decision on whether a given activity is a governmental function, the courts will take a case-by-case approach. *Thomas v Department of State Highways,* 398 Mich 1; 247 NW2d 530 (1976). The operation and maintenance of a jail is a governmental function. *Green v Department of Corrections,* 30 Mich App 648; 186 NW2d 792 (1971), *aff'd,* 386 Mich 459; 192 NW2d 491 (1971), *Wojtasinski v Saginaw,* 74 Mich App 476; 254 NW2d 71 (1977). Furthermore, the prisoner transfer procedure, which required the plaintiff to be separated from his personal property, is an incident of the operation and maintenance of prisons and thus is within the scope of the performance of a uniquely governmental function.

Affirmed. No costs, a public question involved.