No. 55,400

M. BRUENGER & COMPANY, INC., A Kansas Corporation, and DUANE MUELLER, *Plaintiffs-Appellants*, v. DODGE CITY TRUCK STOP, INC., A Kansas Corporation, *Defendant-Appellee*, and GEORGE FANSLER, *Third-party Defendant-Appellee*.

(675 P.2d 864)

Opinion filed January 13, 1984.

*Terry J. Malone,* of Williams, Larson, Strobel, Estes & Malone, of Dodge City, and *T. J. Carney,* of Turner & Boisseau, Chartered, of Great Bend, argued the cause and were on the brief for plaintiffs-appellants.

*Kerry McQueen,* of Neubauer, Sharp, McQueen, Dreiling & Morain, P.A., of Liberal, argued the cause and was on the brief for defendant-appellee.

The opinion of the court was delivered by

MILLER, J.: This is a negligence action for damages brought by M. Bruenger & Company, Inc., and Duane Mueller as plaintiffs against Dodge City Truck Stop, Inc., the defendant. Plaintiffs appeal from judgment entered on a jury verdict finding plaintiffs forty percent at fault, Dodge City Truck Stop ten percent at fault, and the thief who stole and demolished plaintiff's tractor-trailer rig fifty percent at fault. For convenience, we will refer to M. Bruenger & Company, Inc., as Bruenger, to Duane Mueller as Mueller, and to Dodge City Truck Stop, Inc., as the truck stop or Dodge City.

Plaintiffs raise five issues on appeal: (1) Whether the court erred by allowing comparison of the intentional acts of a thief with the negligent acts of a bailee under the doctrine of comparative negligence; (2) whether the defendant-bailee negated the presumption of lack of due care; (3) whether the court erred by instructing the jury that it could consider the plaintiffs-bailors to be licensees; (4) whether the court erred in failing to direct a verdict against the defendant and in favor of the plaintiffs, as there was no substantial competent evidence to support a finding of negligence against the plaintiffs; and (5) whether a negligent bailee should be responsible to a bailor under comparative fault principles, when the bailor's damages are caused by a thief.

The facts must be set out at some length. Mueller owned a Peterbilt truck and hauled refrigerator trailers owned by Bruenger. On May 19, 1980, Mueller picked up a trailer, drove to Dodge City and serviced the "reefer," drove to a plant where the trailer was loaded, and then drove back to Dodge City where he parked the truck and trailer. He discovered that an outside dual tire was flat, and he contacted the manager of OK Tire, Inc., to have the tire replaced. OK Tire is not a part of Dodge City, but is

a separate business. The manager, Kliesen, thought he would have no trouble replacing the tire once his service truck became available. Mueller and Kliesen inspected the truck where it was parked on the Dodge City lot. Kliesen left to return to his shop about 5:30 p.m., and Mueller, thinking that Kliesen would have to move the truck to change the tire, left it unlocked with the keys in the ignition. Mueller had the impression the job would be done shortly.

At 8:00 o'clock p.m., Mueller checked the truck and found that the tire had not been replaced. Around 11:00 o'clock p.m., Mrs. Mueller received a phone call from Joe Snodgrass, a night manager of Dodge City. She learned that Kliesen had brought a tire to the truck stop and arranged for Snodgrass to change the tire. Mrs. Mueller relayed the message to Mueller, who was in the bathtub. Speaking through his wife, Mueller agreed to let Snodgrass change the tire, told him that he could move the truck into the service bay to do the work, and also told him that the keys were in the truck. He told Snodgrass not to let anyone else drive or move the rig. Snodgrass agreed to have the truck ready in time for Mueller's planned 5:00 o'clock a.m. departure.

Nothing was said about where to leave the keys after the work was done. Mueller testified that his experience in the past had been that after repairs were made, the keys were always kept inside the station with the repair ticket until the vehicle was picked up. The owner of the truck stop, however, testified that it was Dodge City's policy to leave trucks the way they were found: if the keys were in the truck before the repairs, they were left in afterward.

Just before midnight, Snodgrass drove the rig into Dodge City's service bay, changed the tire, and then returned the truck to about the same location on the parking lot where he had found it. He left the doors unlocked and the keys in the ignition. Sometime later that night, the truck was stolen by George Fansler. It was overturned and totally demolished about forty miles away.

The parties stipulated that at the time Dodge City took possession of Mueller's tractor and Bruenger's trailer, there was a bailment and a bailor-bailee relationship between plaintiffs and defendant; that George Fansler stole the truck and trailer; and that Mueller's damages were $31,484.75 and Bruenger's damages were $14,946.30.

Before discussing the issues, we look first to the relationship of the parties and the duties arising therefrom. "Bailment" is defined as follows:

"The word 'bailment' is derived from the French term 'bailler' meaning to deliver, and is generally defined as meaning a delivery of property for some particular purpose on an express or implied contract that after the purpose has been fulfilled the property will be returned to the bailor, or dealt with as he directs." 8 C.J.S., Bailments § 1.

"A 'bailment,' in its ordinary legal signification, imports the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it.

"The principles of bailment were borrowed from the civil law; and the word 'bailment' is derived from the French 'bailler,' meaning 'to deliver.'

" 'Bailee' is the term applied to the person who receives the possession or custody of property under circumstances constituting a bailment, and 'bailor' is the designation given the person from whom the property is thus received." 8 Am. Jur. 2d, Bailments § 2.

The delivery of a motor vehicle by the owner to a repairman for the performance of work or repairs thereon is a typical example of a bailment for the mutual benefit of the parties—the owner will have some desired work or repair done upon his vehicle and the repairman will be paid for his services.

The duties and liabilities of a bailee for hire or for mutual benefit have been variously expressed.

"The bailee in a bailment for mutual benefit must use ordinary care and diligence in the safeguarding of the bailor's property, and he is answerable for loss or injury resulting from failure to exercise such care, or . . . for any loss or injury due to his negligence, or ordinary negligence . . . ." 8 Am. Jur. 2d, Bailments § 221.

"Although his liability may be limited or enlarged by special contract, a bailee for mutual benefit is generally held to the exercise of ordinary care and is liable for ordinary negligence." 8 C.J.S., Bailments § 27a(1).

"A repairman with whom a motor vehicle is left for repairs under a bailment for mutual benefit or for hire is not an insurer of the safety of the vehicle, but is required to use ordinary and reasonable care in safeguarding it, and is liable to the owner for loss of, or damage to, the vehicle resulting from his negligent acts or omissions." 61A C.J.S., Motor Vehicles § 731.

"As a bailee for hire, a repair or service station operator has been held liable for theft of a motor vehicle which was left unattended by him in a street or vacant lot outside his shop. It is no defense that it is the usual or customary practice of persons in the same business to park motor vehicles, after completion of repairs, on vacant lots outside their shops. Where an automobile repair company permit-

ted a repaired vehicle to remain on its parking lot with the keys in the ignition, and it subsequently disappeared, the company was negligent in its control and care of the vehicle and was held liable for its loss." 38 Am. Jur. 2d, Garages, and Filling and Parking Stations § 61.

Bearing in mind the relationship of the plaintiffs and the truck stop, we turn to the first issue: Whether the trial court erred by allowing comparison of the intentional acts of a thief with the negligent acts of a bailee under the doctrine of comparative negligence. We agree with appellants, and hold that the trial court did err in allowing comparison.

Theft is clearly one of the harms against which a bailee must protect. The instant Dodge City allowed the tractor-trailer rig to be stolen from its lot, Mueller and Bruenger had sustained some degree of loss. Once it had been stolen, the rig might have been recovered uninjured only a few blocks away; it might have been recovered with its load of meat gone; it might have been recovered partly damaged; or it might never have been recovered. As it turned out, the loss was total despite the truck's recovery. Nevertheless, the amount of damage sustained by the truck has no bearing on Dodge City's duty as a bailee. The thief's level of care in using or abusing the rig did not alter Dodge City's duty one whit. Its obligation was to use ordinary care to prevent the theft in the first place.

The South Carolina case of *Fortner v. Carnes*, 258 S.C. 455, 189 S.E.2d 24 (1972), is particularly helpful. Fortner left his Corvette automobile with the defendant garageman for repairs. The defendant completed the repairs and left the vehicle, with the keys in the ignition, inside of his locked garage building. A thief gained entrance by forcing open one of the garage doors. He stole the Corvette, the wreck of which was later recovered. Plaintiff secured a jury verdict for the value of his automobile, and the defendant garageman appealed. Defendant claimed that any lack of ordinary care on his part was not the proximate cause of plaintiff's loss because between his alleged negligence and the occurrence of an injury to the vehicle there intervened a willful, malicious or criminal act of a third person which produced the injury. In disposing of this claim, the Supreme Court of South Carolina said:

"In a bailment case the theft itself constitutes injury or loss to the bailor and there is no act of a third party intervening between any negligence of the bailee and the injury or loss." 258 S.C. at 462.

Our comparative negligence statute, K.S.A. 60-258a, does not change this or any other rule of the law of bailments. It speaks only of comparative negligence, which we have interpreted to mean comparative fault. The acts or omissions to be compared, in addition to ordinary negligence, include those found in cases decided under the doctrine of strict liability in tort and implied warranty, *Kennedy v. City of Sawyer,* 228 Kan. 439, 618 P.2d 788 (1980), and those found in highway defect cases, *Thomas v. Board of Trustees of Salem Township,* 224 Kan. 539, 582 P.2d 271 (1978), and *Wilson v. Probst,* 224 Kan. 459, 581 P.2d 380 (1978). We have not, however, interpreted K.S.A. 60-258a to require the comparison of negligence with intentional wrongdoing, and the facts of this case do not require such an interpretation. Dodge City had a duty, as bailee, to exercise reasonable care to prevent theft of the rig. It negligently failed to do so, and the rig was stolen. Whether the thief was a careful driver and kept the vehicle forever, or whether the thief was a careless driver who wrecked the vehicle, does not affect the cause of loss—the failure to exercise reasonable care to prevent theft. We conclude that the trial court committed reversible error in requiring the jury to compare the negligence of the bailee with the acts or omissions (whether intentional or negligent) of the thief.

The second issue is whether Dodge City negated the presumption of lack of due care. The bailment and the amount of plaintiffs' damages were stipulated. The truck was stolen from Dodge City's premises, and it was not returned by Dodge City to the owners. When the bailor shows that the property was delivered to the bailee for hire and that the bailee has failed to return it, the bailor has made out a prima facie case of negligence against the bailee, and the burden of going forward with the evidence to explain the failure to redeliver then shifts to the bailee. See 8 Am. Jur. 2d, Bailments § 330; 8 C.J.S., Bailments § 50c(2); *Virginia Surety Co. v. Schlegel,* 200 Kan. 64, 71, 434 P.2d 772 (1967); and *Strange v. Price Auto & Service Co.,* 169 Kan. 98, 104, 218 P.2d 208 (1950).

Dodge City Truck Stop introduced evidence that it was its policy to leave the keys in the truck if the owner had left them in the vehicle, and that it was the policy of other repair shops in the vicinity to leave vehicles unlocked with the keys in them after repairs had been completed. While this evidence may explain

Dodge City's actions, it does not show lack of causative negligence. The leaving of the keys in the ignition of an unlocked and unattended vehicle parked on an outdoor lot at night is negligence as a matter of law, and as pointed out in 38 Am. Jur. 2d, Garages, and Filling and Parking Stations § 61, quoted above,

"It is no defense that it is the usual or customary practice of persons in the same business to park motor vehicles, after completion of repairs, on vacant lots outside their shops. Where an automobile repair company permitted a repaired vehicle to remain on its parking lot with the keys in the ignition, and it subsequently disappeared, the company was negligent . . . ."

Nor is Mueller's own negligence a defense. Under the circumstances of this case, his negligent conduct in leaving the rig unlocked with the keys in it so that the repairman could move it to change the tire occurred before the bailment to Dodge City. Once the bailment arose, Dodge City had care of the rig and Mueller's prior conduct became irrelevant. Mueller's negligence had ceased before the theft occurred. Therefore, there was no reason to compare the negligence of Mueller with that of Dodge City; Mueller's negligence had ceased, and it did not cause or contribute to the theft.

We conclude that Dodge City introduced no evidence which negated the presumption of its lack of due care, which arose upon the showing that it received the vehicle as a bailee, and that it failed to return the rig when the repair work was completed.

The third issue is whether the trial court erred in instructing the jury that it could consider the plaintiffs as licensees. The court instructed as follows:

"A licensee is a person who is privileged to enter or remain upon the premises by virtue of the possessor's consent either express or implied.

"The duty owed by an owner or occupant of the premises to a licensee is to refrain from willfully or wantonly injury him."

The doctrine is generally applicable when someone sustains personal injury upon the premises of another. See *Hanks v. Riffe Constr. Co.*, 232 Kan. 800, 658 P.2d 1030 (1983), and *Gerchberg v. Loney*, 223 Kan. 446, 576 P.2d 593 (1978). It is inapplicable here where Dodge City acted as bailee of the vehicle. Whether Mueller was a licensee or business invitee when he was upon the premises is, for the purposes of this action, entirely immaterial. We hold that the giving of the quoted instruction on the

premises doctrine was reversible error under the facts of this case.

The two final issues plaintiff states are essentially disposed of already. These issues are whether comparative fault principles should be applied in this case and whether the trial court erred in refusing to direct a verdict against Dodge City Truck Stop. Since we have held that the fault of the thief was not to be compared with that of the bailee, Dodge City, and since Mueller's claimed negligence had ceased long before the theft, there was no other party whose negligence could have been compared with that of the truck stop. Comparative negligence principles are inapplicable. Further, since there was no evidence negating the negligence of Dodge City Truck Stop, we conclude that the trial court erred in refusing to direct a verdict against it.

The judgment is reversed, and the case is remanded to the trial court with directions to set aside the jury verdict and the judgment, and to enter judgment for the plaintiffs and against Dodge City Truck Stop, Inc., in the stipulated amounts of their respective damages.