**Warner MELVIN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 96–3113–JTM.**

United States District Court, D. Kansas.

April 23, 1997.

Warren Melvin, Florence, CO, pro se.

Christina L. Medeiros, Assistant U.S. Attorney, Kansas City, for Defendant.

### MEMORANDUM AND ORDER

MARTEN, District Judge.

Warner Melvin, a pro se prisoner, seeks damages for the loss of personal property pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 *et seq.* Melvin alleges a guard at the prison negligently unlocked his prison cell, allowing other prisoners to enter and take his belongings. The United States moved for summary judgment, arguing that Kansas does not impose a duty to safeguard a prisoner's property. The United States also argues that Melvin's response was untimely and the motion should be granted as an unopposed motion.

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The initial burden is on the moving party to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

Once the initial showing has been made, the burden shifts to the nonmoving party to designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. A party may not rely on the allegations of its pleadings but must establish the existence of a genuine issue of material fact through admissible evidence. *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir.1995), *cert. denied,* ——

U.S. ——, 116 S.Ct. 1045, 134 L.Ed.2d 192 (1996).

When determining whether there is a material issue of fact, the nonmoving party's evidence is to be believed; all justifiable inferences are to be drawn in its favor; and its nonconclusory version of any disputed issue of fact is assumed to be correct. *Multistate Legal Studies, Inc. v. Harcourt Brace Publ., Inc.,* 63 F.3d 1540, 1545 (10th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 702, 133 L.Ed.2d 659 (1996).

### II. FACTS

The following factual scenario is based on the allegations of the parties where supported by appropriate citations to the record and with all reasonable inferences drawn in Melvin's favor.

On August 7, 1995, Melvin was incarcerated at the United States Penitentiary (USP) in Leavenworth, Kansas. Melvin worked at UNICOR from 3:30 p.m. until 11:30 p.m. Melvin was informed that he was being moved from "A" Cellhouse—Cell 463, to "C" Cellhouse—Cell 527.

Melvin moved most of his property during the day before the time to report for his work shift. Melvin hid the rest of his property between his bed and the wall. As he was leaving Cell A–463, Melvin asked Officer Herbert Richard to deadlock the cell and checked to see that it was locked. Melvin did not tell Richard there was property in the cell.

Richard walked through the unit at approximately 3:15 p.m. and saw no property or bedding in the cell. The cell's locker was open and empty. Richard assumed Melvin had moved out of the cell, and did not check the bed lodge book. Richard testified he was required to open all the cell doors at 4:00 p.m. to allow inmates returning from work to enter their cells. Richard apparently unlocked the cell at this time. Melvin disputes the requirement that all cell doors must be opened at 4:00, arguing that only the cell doors of inmates who get off at 3:30 needed to be opened. Neither party provides citations to the appropriate rules and regulations.

Melvin's supervisor at UNICOR released him from his work detail so he could finish moving his property. When Melvin returned to Cell A–463, the cell was unlocked and his property was missing.

Later that evening, in the presence of Officer Lowell Streeter, Melvin asked Richard what had happened. There are two versions of Richard's response. According to plaintiff Melvin, Richard said he thought Melvin had moved and he opened the cell door and allowed other prisoners to take Melvin's property. Richard suggested Melvin file a property claim, indicating he would admit he opened the cell door and allowed other prisoners to remove the property from the cell.

According to Richard, Melvin asked him who had opened his cell, and Richard admitted he had opened it, explaining he thought Melvin had moved out because he did not see any property in the cell. Melvin told Richard he had hidden his property between the bed and the wall. Richard advised Melvin to make a claim. As he did not know Melvin had any property in the cell, Richard contends he would not have told Melvin he had let other prisoners take his property. At some point in time, however, Richard must have become aware that Melvin had property in the cell. Richard's affidavit is unclear as to when he unlocked the cell and when he became aware of Melvin's property.

Streeter testified he did not hear Richard tell Melvin that he had let other prisoners remove Melvin's property from the cell.

Melvin filed an administrative tort claim that evening, valuing the missing property at $226.30. The missing property consisted of electronic equipment, Adidas shoes and food. The claim form Melvin filled out is consistent with his version of the conversation. The form provides civil and criminal penalties for making false statements.

Lieutenant Randall Torix investigated the claim and interviewed Melvin. Torix testified Melvin told him Richard did not know his property was hidden between the bed and the wall and he did not believe Richard had intentionally unlocked the cell. Melvin did not tell Torix that Richard had said he let other prisoners take Melvin's property.

The government argues Melvin's self-serving version must be disregarded because it is inconsistent with his statements to Torix and with Streeter's testimony. Nevertheless, for summary judgment purposes Melvin's version must be believed. Torix was questioning Melvin based on his administrative claim, which contained Melvin's version of the facts. Melvin's failure to mention Richard's alleged statement in the interview is not as significant as the government claims, where Melvin had provided Torix with his claim containing the statement. However, Melvin does not dispute he told Torix that Richard's acts were not intentional and he does not allege intentional conduct in his complaint.

## III. PROCEDURAL HISTORY

Melvin's administrative complaint was denied on October 18, 1995, and he timely brought suit challenging the denial. Melvin named the U.S. Bureau of Prisons, and Officers Richard and Streeter as defendants. Judge Van Bebber directed the United States be substituted as the sole defendant and dismissed the named defendants from the action pursuant to 28 U.S.C. § 2672. He found Melvin had exhausted his administrative remedies and ordered a responsive pleading from the United States.

Melvin was transferred to a federal correctional facility in Colorado. After obtaining an extension of time, the United States filed a motion for summary judgment on June 17, 1996. Melvin did not respond, and on July 29, 1996 the United States requested an order to show cause why the action should not be dismissed or the summary judgment motion granted as an unopposed motion. Melvin responded to both motions on August 12, 1996. The government did not file a reply brief. Judge Van Bebber subsequently transferred the case to this court.

## IV. TIMELINESS OF PLAINTIFF'S RESPONSE

The United States argues Melvin's response was untimely and under D. Kan. Rule 7.4 his complaint should be dismissed or the motion for summary judgment granted as an unopposed motion.

Melvin argues excusable neglect, claiming that when he received the motion for summary judgment he did not have access to the local rules for the District of Kansas. He also argues summary judgment may not be granted if the moving party has not made the required initial showing even in the absence of a response, citing *Kaufman v. Cserny*, 856 F.Supp. 1307 (S.D.Ill.1994). This is consistent with Tenth Circuit case law. *See Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1383 (10th Cir.1980) (if movant's documents do not establish the absence of a genuine issue of fact, summary judgment must be denied, even if no opposing evidentiary matter is presented) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)).

Here, Melvin provides citations to admissible evidence in his initial pro se complaint. His response contains only additional argument which the court would be required to interpret liberally. While the deadline for filing responses is not contained in D. Kan. R. 7.4, Melvin's assumption is a reasonable one given the wording of the government's brief and Melvin's lay status. Melvin responded to the motion for a show cause order. The Tenth Circuit has found dismissal of a pro se litigant's complaint under a similar local rule and circumstances was an abuse of discretion. *Meade v. Grubbs*, 841 F.2d 1512, 1519–22 (10th Cir.1988) (W.D. Okla. Rule 14(a) (1982)). Failure of a pro se litigant to timely respond to the defendant's motions must amount to a "clear record of delay and contumacious conduct" before dismissal is justified. *Meade* 841 F.2d at 1522. Melvin's response will be considered and the motion for summary judgment will not be granted as an unopposed motion.

## V. ANALYSIS OF PLAINTIFF'S CLAIM

The United States correctly admits it will be liable for the loss of Melvin's property under the FTCA if the loss resulted from the negligent or wrongful acts or omissions of prison officials acting within the scope of their employment, and liability would be imposed on a private person in similar circumstances under the law of the place where the loss occurred. 28 U.S.C. § 1346(b). The United States certified that the involved officials were acting within the scope of their authority and has not disputed that Melvin suffered a property loss. Accordingly, whether a private individual would be liable under Kansas law must be determined because the loss occurred in Kansas.

The United States suggests Kansas bailment law is applicable and imposes no duty on prison officials to safeguard an inmate's personal property. The court's research revealed no Kansas case law addressing tort liability for the loss of an inmate's property.[1]

### A. Tenth Circuit and District of Kansas Case Law

In unpublished opinions, the Tenth Circuit has implicitly indicated loss of property may entitle an inmate to compensation under the FTCA and Kansas tort law. *See, e.g., Burton–Bey v. United States*, 1996 WL 654457 (10th Cir.1996); *Clifton v. Nared*, 1994 WL 47165 (10th Cir.1994) (*Clifton II); Walker v. United States*, 1993 WL 144385 (10th Cir. 1993). *See also Moore v. United States Bureau of Prisons*, 1994 WL 162559 (10th Cir. 1994) (apparently applying Michigan law).

*Burton–Bey* held Kansas recognized the tort of conversion and the United States would be liable for any conversion under the FTCA. Burton–Bey was transferred to the USP at Leavenworth from another federal correctional facility. When Burton–Bey arrived at Leavenworth, prison officials confiscated a dark blue Dallas Cowboys cap pursuant to local regulations prohibiting such items and authorizing their seizure. The Tenth Circuit found conversion under Kansas

---

1. The Kansas Court of Appeals has recognized that prison officials may restrict the personal property an inmate is allowed to possess while in prison. *Bryant v. Barbara*, 11 Kan.App.2d 165, 167–68, 717 P.2d 522 (1986). However, once an inmate is allowed to possess personal property, a protected interest in that property arises. *Id. Bryant* found the seizure and permanent retention of contraband was authorized by prison regulations and did not violate due process, thus no claim under 28 U.S.C. § 1983 was cognizable. *Id. Bryant* did not address whether an inmate could seek damages for the loss of property through the negligence of prison officials when there is no claim the property was seized as contraband.

law had not occurred because the seizure was authorized by the regulations.

*Clifton II* affirmed summary judgment where Clifton failed to cite evidence of ownership of the property at issue and negligence on the part of prison officials. The officials had inventoried confiscated property, retaining books which did not appear to be Clifton's property and contraband but returning the rest of the property. *Clifton v. Nared,* 1993 WL 100336 (D.Kan.1993) (*Clifton I*).

In *Walker,* the Tenth Circuit reversed summary judgment for the United States because the district court had made a credibility determination, apparently deciding to believe the United States' affidavits and to disregard Walker's. On remand, the district court held an evidentiary hearing and rejected Walker's claim. The Tenth Circuit affirmed. *Walker v. United States,* 1995 WL 87122 (10th Cir.1995) (*Walker II*). Moore is discussed below in a review of the law of other jurisdictions.

Cases from this district recognize that prison officials can be held liable for negligence in the loss of an inmate's property, but cite only general negligence law without discussing the appropriate tort theory and its elements under Kansas law. *See, e.g., Clifton I, supra* (citing *Schmeck v. City of Shawnee,* 232 Kan. 11, 24, 651 P.2d 585 (1982)).

### B. *Other Jurisdictions*

The court has surveyed the case law of other jurisdictions. In *Fearon v. California Dept. of Corrections,* 162 Cal.App.3d 1254, 209 Cal.Rptr. 309 (1984), Fearon turned a belt buckle over to prison officials when he was incarcerated. Upon his release, the belt buckle was not returned. The California Court of Appeals held tort claims by prisoners were precluded by statute, thus a claim that prison officials negligently lost the buckle while Fearon was incarcerated was properly dismissed. The court noted the plaintiff appeared to state a bailment contract claim, but the statute of limitations had lapsed. The court reversed dismissal of a conversion claim, based on the failure of prison officials to return the property when Fearon was released from prison. *Id.*

The Georgia Court of Appeals recognized an inmate's right upon release to reclaim currency seized as contraband under a theory of conversion, absent a specific statutory authorization for permanent forfeiture. *Balkcom v. Heptinstall,* 152 Ga.App. 539, 263 S.E.2d 275 (1979), *cert. dismissed,* 245 Ga. 567 (Ga.1980). The Tennessee Court of Appeals reached the same conclusion. *See Blackmon v. Norris,* 775 S.W.2d 367 (Tenn. App.), *appeal denied . See also Sell v. Parratt,* 548 F.2d 753 (8th Cir.) (in the absence of authorization in state law, permanent forfeiture violated due process clause) (Nebraska law), *cert. denied,* 434 U.S. 873, 98 S.Ct. 220, 54 L.Ed.2d 152 (1977). *Compare Bryant, supra,* where Kansas administrative regulations were held to authorize permanent forfeiture of contraband. 11 Kan.App.2d at 167–70, 717 P.2d 522. In *Bryant,* the contraband was illegally obtained property, rather than money. *Id.*

The Seventh Circuit has held implicitly that under Illinois law, once a prisoner establishes a bailment relationship and actual loss of property, the government is liable for conversion. *Sellers v. United States,* 1996 WL 525426 (7th Cir.1996) (*Sellers III*). Forty-one law books were seized from Sellers during a lockdown at the USP in Marion, Illinois. Sellers was subsequently transferred to another prison and alleged the law books were not returned to him. The district court entered judgment for the United States. The Seventh Circuit vacated and remanded. It directed the district court to enter judgment for Sellers unless it could find the books were shipped from Marion and returned to Sellers. *Id.*

The Sixth Circuit has held that under Kentucky law, a prison is a gratuitous bailee with a duty of slight care, which is satisfied when an inmate's property is inventoried before and after a transfer. *Sharif v. Doe,* 1996 WL 166587 (6th Cir.1996) (affirming summary judgment).

The Michigan Court of Appeals has held a bailment is not created when a prisoner is required to entrust personal property to prison officials, even where a receipt is issued. *Spruytte v. Dept. of Corrections,* 82 Mich.

App. 145, 266 N.W.2d 482 (1978). Furthermore, securing the property was a governmental function under Michigan law, thus the Department of Corrections was immune from liability in tort. *Id.*

In *Moore, supra,* the Tenth Circuit reversed dismissal of Moore's claim for failure to present evidence of negligence and actual loss. Both parties had filed materials beyond the pleadings and the Tenth Circuit evaluated the motion under a summary judgment standard. Moore submitted evidence indicating he gave two boxes of property to a marshal prior to a transfer and only one box was returned to him after the transfer. Moore alleged a prison official had inadvertently thrown one box away. The Tenth Circuit found Moore had raised a material question of fact, noting that the government had not come forward with sufficient evidence to disprove Moore's theory of negligence. The Tenth Circuit was apparently applying *Michigan* law, although this is not stated expressly in the opinion. *Moore, supra.*

On remand, the district court held a trial and found the government had negligently lost the second box of property. The district court noted that no testimony substantially contradicted Moore's theory of negligence, while credible testimony supported it. *Moore v. United States,* 1996 WL 662446 (D.Kan.1996) (*Moore II* ). *Moore* and *Moore II* implicitly recognize that under Michigan law, the United States can be held liable for the loss of an inmate's property under a bailment theory.[2]

In *Jungerman v. City of Raytown,* 925 S.W.2d 202 (Mo.1996) (en banc), Jungerman was arrested and taken to the police station. His personal property, including a Rolex watch, was taken from him and placed in a open wooden box accessible to the public for about 45 minutes while the booking officer took a statement in an unrelated matter. Local regulations required an immediate inventory. Jungerman's property was subsequently inventoried but the watch was not listed. When Jungerman was released the next day, the watch was missing. The trial court gave a bailment *res ipsa loquitur* instruction and the jury returned a verdict for Jungerman. The trial court granted judgment notwithstanding the verdict for Raytown based on immunity. It denied Raytown's alternative motion for a new trial.

The Missouri Supreme Court reinstated the jury verdict.[3] *Jungerman* held that: (1) securing a prisoner's property was ministerial in nature, and thus, discretionary function immunity did not apply; (2) the primary purpose for conducting an inventory was to protect Jungerman's interests, and thus, public duty immunity did not apply; and (3) Jungerman could reasonably assume property left with the police would not disappear in the absence of due care and the superior knowledge of the police about the means or cause of the loss, and thus, the trial court did not commit clear error when it gave the *res ipsa* instruction, even though the case did not present a bailment case in a strict sense.

In *Nitcher v. Thompson,* 777 S.W.2d 626 (Mo.App. W.D.1989), the Missouri Court of Appeals held a prisoner could bring a claim for loss of property under a theory of negligence or a theory of bailment. *Id.,* 777 S.W.2d at 628. The court further held that securing an inmate's property was ministerial in nature, precluding a discretionary function defense. *Id.*

Ohio recognizes a theory of implied bailment in prisoner property cases, and once an implied bailment relationship and loss of property are established, the burden shifts to the state to show that it was not negligent. *Bacote v. Ohio Dept. of Rehabilitation and Correction,* 61 Ohio Misc.2d 284, 578 N.E.2d 565 (1988).

Pennsylvania's Commonwealth Court held the Pennsylvania Board of Claims has no jurisdiction over an inmate's property claims

---

**2.** *Moore* and *Moore II* may be read to be inconsistent with *Spruytte.* However, *Spruytte* rejected the contract claim because all the elements of a contract were not present. A tort theory was rejected on immunity grounds.

**3.** Prior to transfer to the Missouri Supreme Court, the Missouri Court of Appeals also reversed the trial court and reinstated the verdict. *Jungerman v. City of Raytown,* 1995 WL 619249 (Mo.App.1995), *vacated and transfer ordered,* 925 S.W.2d 202 (Mo.1996).

because no contract has been entered into by the inmate, who has no choice in the matter. *Commonwealth, Dept. of Corrections v. Board of Claims,* 135 Pa.Cmwlth. 350, 580 A.2d 923 (1990). This decision appears to be based on a statute limiting the jurisdiction of the Board of Claims to contract cases, although the dicta indicates a bailment claim brought before a proper tribunal would not be cognizable for the same reason. *Id.*

The Texas Court of Appeals has touched on the matter in an unpublished case, indicating that a penal statute provides no basis for civil liability for loss of property by a prisoner. *Bob v. Bailey,* 1993 WL 153746 (Tex. App.1993). The Bob court noted administrative remedies had not been exhausted and did not address whether an action could be pursued under another theory, such as negligence or bailment. *Id.*

The Sixth Circuit has held that under Tennessee law, once a prison guard agrees to lock a prisoner's cell upon request, a duty to act carefully and with due care arises under a bailment theory. *Wright v. Young,* 1987 WL 38529 (6th Cir.1987) (reversing dismissal). Thus, Tennessee appears to recognize both conversion and bailment in a prison situation. *See Blackmon, supra* (conversion).

The Seventh Circuit recognized a theory of bailment applies to an inmate's loss of property claim under Indiana law, but declined to decide whether the United States had a duty of ordinary or great care. *Evans v. United States,* 1993 WL 55024 (7th Cir.1993). *Evans* instead affirmed a finding at trial that no loss had occurred. *Id.*

The Court of Federal Claims, holding that a claim for loss of property by a prisoner sounds in tort and not under an implied contract of bailment, determined it lacked jurisdiction to consider the claim. *Blazavich v. United States,* 29 Fed. Cl. 371 (Fed.Cl. 1993).

Doctrines limiting the liability of state officials on immunity grounds do not appear to be relevant. Congress has determined the extent of the waiver of immunity granted by the FTCA and has waived immunity to the extent that a "private person" would be liable under state law, not to the extent a state has chosen to waive its own immunity. 28 U.S.C. § 1346(b). With the exception of the dicta in *Pennsylvania Dept. of Corrections,* no court has rejected a conversion theory or a tort claim based on an implied bailment theory in a prison context on the grounds that such a tort would not be cognizable against a private person.

### C. Conclusions Regarding Kansas Law

The government cites only general Kansas case law listing the elements required to establish liability for negligence: a duty owed to the plaintiff; breach of that duty; injury proximately caused by the breach; and damages. *See, e.g., P.W. v. Kansas Dept. of Social & Rehabilitation Services,* 255 Kan. 827, 831, 877 P.2d 430 (1994). The government argues it owed no duty to Melvin because it was not aware that Melvin had personal property in the cell, and to the extent any duty existed, it was met when Richard looked into the cell and locker prior to unlocking the cell.

The existence of a duty is a question of law. *Id.* Breach and causation issues are questions of fact for the factfinder. *Calwell v. Hassan,* 260 Kan. 769, 777–78, 925 P.2d 422 (1996). Generally, a person has no duty to control the conduct of third parties in order to prevent harm to another. *McGee v. Chalfant,* 248 Kan. 434, 438, 806 P.2d 980 (1991). However, under Kansas law a special relationship between certain persons can create a duty. *Calwell,* 260 Kan. at 777, 925 P.2d 422. A bailee owes certain duties to the bailor. *See Nova Stylings, Inc. v. Red Roof Inns, Inc.,* 242 Kan. 318, 747 P.2d 107 (1987) (innkeeper bailment); *Global Tank Trailer Sales v. Textilana–Nease, Inc.,* 209 Kan. 314, 496 P.2d 1292 (1972).

Kansas appears to recognize four types of bailment relationships. Kansas recognizes bailments where the bailee acts as insurer for the property of the bailor, although it does not expressly label such relationships as bailments. For example, Kansas has implicitly adopted the common law rule that an innkeeper acts as the insurer of a guest's property. *Nova Stylings,* 242 Kan. at 321, 747 P.2d 107 (citing *Johnson v. Reynolds,* 3 Kan. 257, 262 (1865)).

■ At the other extreme are gratuitous bailments, where the bailee owes the bailor a duty of slight diligence. *Johnson,* 3 Kan. at 261–63. For example, when a boarder leaves property with an innkeeper, the innkeeper only has a duty of slight diligence and is not liable except upon a showing of gross neglect. *See Id.* Gross neglect is the failure to exercise that level of care which the habitually careless and negligent exercise for their own belongings. *Lobenstein v. Pritchett,* 8 Kan. 213, 214, 219 (1871).

■ In between are bailments for hire and bailments for mutual benefit, both of which impose a duty of reasonable care on the bailee. *Global Tank,* 209 Kan. at 316–17, 496 P.2d 1292.

■ A bailment for mutual benefit arises whenever it appears both the parties receive a benefit from the transaction. *Global Tank,* 209 Kan. at 316, 496 P.2d 1292. It is not necessary for the bailee to receive compensation from the bailor, so long as the bailment is an incident of the business from which the bailee makes a profit. *Id.* Under both theories, when the bailor shows the property was delivered to the bailee and the bailee failed to return it, the bailor has made a prima facie case of negligence and the burden shifts to the bailee to come forward with evidence to explain the failure to redeliver the property. *See M. Bruenger & Co. v. Dodge City Truck Stop, Inc.* 234 Kan. 682, 687, 675 P.2d 864 (1984) (applying burden shifting under bailment for hire to bailment for mutual benefit)

What is the nature of the bailment relationship between an inmate and his jailor under Kansas law? At first glance the relationship would appear to be akin to that of a boarder and an innkeeper, with only a duty of slight diligence imposed upon a jailor. This appears to be the Sixth Circuit's interpretation of Kentucky law. *See Sharif, supra.* Like Kansas, Kentucky recognizes a distinction between the duties owed to a guest and a boarder. *See Zurich Fire Ins. Co. of New York v. Weil,* 259 S.W.2d 54 (Ky.App.1953).

However, Missouri and Ohio also recognize the distinction between a guest and a boarder. *Arcade Hotel Co. v. Wiatt,* 44 Ohio St. 32, 4 N.E. 398 (1886); *Snider v. Rogers,* 1981 WL 6739 (Ohio App.1981). *See also Jackson v. Engert,* 453 S.W.2d 615 (Mo.App.1970) (discussing statutory innkeeper's lien). Nevertheless, both states impose a duty of ordinary care with a presumption of negligence in a prison situation once a bailment relationship and an actual loss are established. *Jungerman,* 925 S.W.2d 202; *Bacote,* 61 Ohio Misc.2d 284, 578 N.E.2d 565. As previously noted, cases in this district have imposed a duty of ordinary care, without discussing the appropriate bailment theory.

■ The relationship between an inmate and prison officials is certainly more substantial than that between a boarder and his host. However, the circumstances justifying strict liability under the innkeeper's rule are not present—inmates are not transient guests forced to rely on hosts who may be in league with robbers.[4] Similarly, inmates do not pay prison officials to safeguard their personal belongings, so bailment for hire is inapplicable. The restrictions imposed on an inmate's ownership of property and ability to control access to their cells are clearly imposed for the benefit of prison officials and the United States as well as the protection of inmates. This court is convinced the Kansas Supreme Court would follow *Jungerman* and *Bacote.* Accordingly, bailment relationships in a prison context are based on mutual benefit.

■ Here, Melvin asked Richard to lock the cell and Richard did so. Richard has not suggested any other reason why Melvin would desire to have his cell locked other than to secure his property in the cell. As in *Wright, supra,* once Richard agreed to lock Melvin's cell, for the obvious purpose of securing property, Richard had a duty to act with reasonable care. Theft is one of the harms against which a bailee must protect. *M. Bruenger,* 234 Kan. at 686, 675 P.2d 864. For summary judgment purposes, Melvin has established the existence of a bailment situation and that his property was missing

---

4. Imposing liability under the innkeeper's rule would not necessarily be disadvantageous to the government. Liability would be limited by statute. *See* K.S.A. 36–402.

when he returned for it. Thus, he has established a prima facie case of liability. Accordingly, the government must now come forward with evidence explaining the loss and why it was not negligent.

The government argues that any duty was met when Richard looked into the cell and locker before unlocking the cell. What amounts to negligence varies depending on the circumstances of the case and is a question of fact for the jury. *Lobenstein,* 8 Kan. at 214, 219. A reasonable factfinder could conclude that Richard's act of unlocking the cell before conducting a thorough search was negligent, without regard to whether Richard saw other inmates removing property from Melvin's cell and failed to act to prevent the theft. Melvin is not required to prove intent in any event.

IT IS ACCORDINGLY ORDERED this 22nd day of April, 1997, that defendant's motions for summary judgment (Dkt. No. 8) and for an order to show cause (Dkt. No. 10) are denied. An order scheduling mediation and, if necessary, a bench trial will be issued shortly.