*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

QUENTIN BETTY,

        Plaintiff-Appellant,

v

DEPARTMENT OF CORRECTIONS, and
DEPUTY DIRECTOR OF DEPARTMENT OF
CORRECTIONS,

        Defendants-Appellees.

UNPUBLISHED
April 25, 2024

No. 366214
Court of Claims
LC No. 22-000160-MP

Before: M. J. KELLY, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Plaintiff, Quentin Betty, appeals as of right the Court of Claims' order granting defendants' motion for summary disposition under MCR 2.116(C)(8). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

Betty is incarcerated. He is also a member of the Nation of Islam. Adherents of the religion abide by dietary restrictions, which include prohibitions against eating peanut butter, potatoes, beans, soy, or soy by-products. In 2015, Betty signed a document titled "Religious Meal Participation Agreement." The document indicated that, if he was approved, defendants would provide him meals meeting his religious dietary restrictions so long as he did not possess or consume foods that were prohibited by his religion. In 2022, Betty filed a complaint against defendants, alleging that the document was a contract and that defendants breached it by offering him meals that included prohibited foods. Defendants moved for summary disposition under MCR 2.116(C)(8), arguing they were not in a contractual relationship with Betty because religious diets were part of prison control and management, and defendants were required under a prison policy directive to provide qualified prisoners with religious diets. The Court of Claims granted summary disposition in favor of defendants, holding the religious meal arrangement was part of defendants' preexisting duty and that, as a result, Betty failed to establish valid consideration to support his contentions that the parties had a binding contract.

## II.  CONTRACT

### A.  STANDARD OF REVIEW

Betty contends that the Court of Claims erred in granting summary disposition in favor of defendants on his breach-of-contract claim because there was a binding contract supported by consideration.  Appeals from the Court of Claims are treated as if the Court of Claims were a circuit court.  See MCL 600.6446(1).  This Court "review[s] de novo a trial court's decision on a motion for summary disposition."  *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).  "The existence and interpretation of a contract are questions of law reviewed de novo."  *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

### B.  LAW AND ANALYSIS

To prevail on a claim for breach of contract, a party must establish by a preponderance of the evidence that:  "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach."  *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016).  Before determining if a contract was breached, a court must first inquire whether a valid contract exists.  On appeal, Betty argues that because the document he signed was titled "Religious Meal Participation Agreement", it is effectively a contract.  Plaintiff bases his contention on the word "agreement" in the document's title.  However, "[a] valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation."  *Innovation Ventures, LLC v Liquid Mfg, LLC*, 499 Mich 491, 508; 885 NW2d 861 (2016) (quotation marks and citation omitted).

At issue in this case is whether the third element, legal consideration, was present in the agreement between Betty and defendants.  "To have consideration there must be a bargained-for exchange; [t]here must be a benefit on one side, or a detriment suffered, or service done on the other."  *Innovation Ventures*, 499 Mich at 508 (quotation marks and citation omitted; alteration in original).  "Generally, courts do not inquire into the sufficiency of consideration: [a] cent or a pepper corn, in legal estimation, would constitute a valuable consideration."  *Id*. (quotation marks and citation omitted; alteration in original).  However, "[u]nder the preexisting duty rule, it is well settled that doing what one is legally bound to do is not consideration for a new promise."  *Yerkovich v AAA*, 461 Mich 732, 740-741; 610 NW2d 542 (2000).  "This rule bars the modification of an existing contractual relationship when the purported consideration for the modification consists of the performance or promise to perform that which one party was already required to do under the terms of the existing agreement."  *Id*. at 741.

In *Spruytte v Dep't of Corrections*, 82 Mich App 145; 266 NW2d 482 (1978)[1], this Court considered a situation where the plaintiff, an incarcerated prisoner, brought suit against the Michigan Department of Corrections (MDOC) claiming damages for an alleged breach of a

---

[1] Although we are required to follow cases decided on or after November 1, 1990, see MCR 7.215(J)(1), a published case decided by this Court "has precedential effect under the rule of stare decisis," MCR 7.215(C)(2).

bailment contract, because the plaintiff's personal property was not returned to him after his transfer to another prison. This Court held that "[t]he parties did not appear to have any intention of entering into a contractual relationship since [the transfer] procedure was required as an aspect of prison management and control. Furthermore, this purported contract lacks consideration since the parties were only performing a preexisting duty." *Id*. at 147.

This Court applied its reasoning from *Spruytte* in *Freiburger v State of Mich Dep't of Mental Health*, 161 Mich App 316; 409 NW2d 821 (1987), in which the plaintiff's decedent died from a self-inflicted gunshot wound after being released from a mental-health clinic. The plaintiff filed suit against defendants alleging defendants breached their contract with the decedent to provide appropriate care and treatment. *Id*. at 317. Relying on *Spruytte*, this Court held that if defendants had a preexisting duty to provide the decedent with mental-health treatment, there was no consideration for the alleged contract; therefore, no contract existed between the parties. *Id*. at 318.

As relevant to this case, MDOC Policy Directive 05.03.150 provides that "[p]risoners shall be permitted to abstain from any foods that violate their religious tenets." This policy directive made the arrangement of religiously-appropriate meals for prisoners who were approved to eat from a religious menu a preexisting duty. Thus, the policy was an aspect of prison management and control. See *Spruytte*, 82 Mich App at 147; MCL 791.206(1)(d) (stating that "the [MDOC] director may promulgate rules . . . to provide for . . . the management and control of state penal institutions"). Because defendants had a preexisting duty to follow this policy, any purported contract lacked consideration. See *Yerkovich*, 461 Mich at 740-741. Without consideration, there was no contract between the parties. See *Innovation Ventures*, 499 Mich at 508. Without the existence of a valid contract, Betty's "claim is so clearly unenforceable that no factual development could possibly justify recovery." *El-Khalil*, 504 Mich at 160. Accordingly, the Court of Claims did not err when it granted defendants summary disposition.

Lastly, Betty suggests that there is no preexisting duty because a prison policy is not a law that defendants were legally bound to follow. The preexisting duty rule, however, does not apply only to legal duties; rather it applies to all duties "which one party was already required to do under the terms of the existing agreement." *Id*. at 741; see also *Spruytte*, 82 Mich App at 147; *Freiburger*, 161 Mich App at 318. As discussed above, defendants had a preexisting duty to follow the policy, so the agreement lacked consideration and cannot be a binding contract.

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Christopher M. Murray

-3-